Salvatore J. SYLVESTRI, Plaintiff-Appellee,

v.

The WARNER & SWASEY CO., Inc., Defendant-Appellant.

Salvatore J. SYLVESTRI, Plaintiff-Appellee,

v.

COMAD, INC., Defendant-Appellant.

Nos. 397, 398, Docket 32022, 32023.

United States Court of Appeals Second Circuit.

Argued May 6, 1968.

Decided June 24, 1968.

Raymond L. Falls, Jr., New York City (Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, and Samuel S. Weiner, Yonkers, N. Y., on the brief), for plaintiff-appellee.

Edmund F. Lamb, New York City (Purdy, Lamb & Catoggio, Juvenal L. Marchisio, and Schaffner & Furey, New York City, on the brief), for defendant-appellant The Warner & Swasey Co., Inc.

William F. McNulty, New York City (J. Robert Morris, New York City, on the brief), for defendant-appellant Comad, Inc.

Before LUMBARD, Chief Judge, and SMITH and ANDERSON, Circuit Judges.

LUMBARD, Chief Judge:

The Warner & Swasey Co., Inc. and Comad, Inc. appeal from a judgment entered in these consolidated diversity actions after a trial before Judge Mansfield and a jury in the Southern District of New York. The judgment awarded plaintiff, Salvatore J. Sylvestri, $25,000 against both appellants jointly and severally for personal injuries sustained by plaintiff when he was thrown from the operator's seat of a backhoe manufactured by Warner & Swasey and sold by a predecessor of Comad to Sylvestri's family-owned construction corporation as part of a combined equipment unit. The judgment, in addition, dismissed each appellant's cross-claim for indemnity against the other, the determination of these cross-claims having been reserved to the court. Comad also appeals from

an interlocutory order by Judge Wyatt denying its motion for judgment on the pleadings.

Warner & Swasey contends that there was insufficient evidence to support the jury's finding of liability on the basis of breach of express warranty; that, as the backhoe was a component part, no express warranty ran from Warner & Swasey, the manufacturer, to plaintiff; and that the jury's finding of breach of express warranty cannot be sustained because of inconsistencies in the jury's answers to special interrogatories. Warner & Swasey also contends that its liability is without fault, and therefore the trial court erred in dismissing its cross-claim against Comad.

Comad, in addition to questioning the sufficiency of the evidence upon which the jury found it negligent, argues that the action against it was not timely commenced within the applicable period of the New York statute of limitations, and that therefore Judge Wyatt erred in not granting its motion for judgment on the pleadings. Judge Wyatt, in denying the motion, held that Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), overruled Ragan v. Merchants Transfer and Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), so that "commencement" of a diversity action for statute of limitations purposes is to be tested by Rule 3, Fed.R.Civ. P., rather than by the state standard. 244 F.Supp. 524 (S.D.N.Y.1965). Furthermore, both Warner & Swasey and Comad challenge the admission of certain evidence on the question of damages and the court's charge with respect to this evidence. We find that all the contentions of both appellants are without merit, and we affirm the judgment.

A backhoe is a piece of construction machinery consisting principally of an inverted scoop at the end of a shaft, an operator's seat, and two stabilizers or outriggers or "jacks" which are designed to rest on the ground to prevent the backhoe from tipping over when the scoop is extended and moved from side to side. The backhoe is not operative by itself but must be attached to another piece of equipment, in this instance a tractor called a Michigan Front Loader 85A, which provides the hydraulic power necessary to operate not only the scoop and shaft but the stabilizers as well.

Warner & Swasey sold the backhoe involved in Sylvestri's accident to Comad's predecessor (hereinafter referred to simply as Comad). On March 27, 1961 Comad, having attached the backhoe to a Michigan Front Loader, sold the combined unit to Sylvestri who was operating as the Lincoln Contracting Corporation of Yonkers, New York, a corporation whose stock was owned solely by Sylvestri and his wife.

Between March 27, 1961 and August 18, 1961, the date of Sylvestri's accident, Sylvestri used the backhoe for digging trench and lifting pipe. Throughout this period, beginning as early as March 30, 1961, Sylvestri made numerous complaints to Comad that the stabilizers did not remain in place on the ground when the backhoe was in operation, and as a result the machine wobbled. In response, Comad made service calls and attempted to rectify the situation by adjustments to the hydraulic system in the stabilizers, including replacement of the stabilizers' piston rings. Comad, however, advised Sylvestri to continue to use the machine as there was no danger.

On August 18, 1961, while working on a project in Yonkers, Sylvestri for the first time began to use the backhoe as a crane to move boulders needed in the construction of a retaining wall. He attached a chain to a bolt on the end of the shaft behind the scoop and then looped the other end of the chain around a boulder. He then used the backhoe to lift the boulder and swing it around to where it was needed. According to Sylvestri's uncontradicted testimony, after several such maneuvers while he was lifting another rock, the stabilizers again failed to remain in place. As a result, the backhoe tilted to one side,

and Sylvestri was thrown to the ground and suffered a fractured wrist.

*Breach of Express Warranty by Warner & Swasey*

The trial court submitted Sylvestri's action against Warner & Swasey to the jury on theories of breach of express warranty and negligence. In answers to special interrogatories the jury found in favor of Warner & Swasey on the issue of negligence but against Warner & Swasey on the issue of breach of express warranty.

■ Warner & Swasey maintains that there was insufficient evidence to support a jury finding that it had expressly warranted that the backhoe could be used to lift and move boulders in the manner in which Sylvestri was using it at the time of the accident. A Warner & Swasey advertising brochure, which Sylvestri received prior to his purchase of the backhoe and which Sylvestri introduced into evidence, contains a picture of the backhoe being used to lift a length of pipe and states that the "[h]ydraulic system provides powerful lift force for material handling, sewer-pipe laying, etc." The brochure also states that the backhoe was "constructed of strong boxed sections, electric-welded to form an extremely rigid foundation for digging and loading at any angle up to 90° right or left from centerline of tractor." Warner & Swasey does not dispute that the boulder being moved by plaintiff at the time of the accident was well within the intended weight capacity of the backhoe. While Sylvestri apparently did not attach the rock to the backhoe in exactly the same manner that the pipe was attached in the brochure picture, and while lifting rock may in some way be different from lifting pipe, we conclude that the jury was properly left to determine under the applicable New York law whether the brochure picture and statements as a whole represented an affirmation of fact or promise that the machine could be used as Sylvestri used it.[1] It is the "essential idea" conveyed by the advertising representations which is relevant, Rachlin v. Libby-Owens-Ford Glass Co., 96 F.2d 597, 599 (2 Cir. 1938), and the representations made here by Warner & Swasey support a jury finding favorable to Sylvestri.

■ Warner & Swasey claims that it was prejudiced by the admission of evidence that a Comad salesman showed plaintiff the backhoe being used by a third party in a lifting-operation. This evidence was clearly admissible against Comad, and Warner & Swasey was not prejudiced because the Court in its charge omitted all reference to this evidence when instructing the jury what it could consider in determining the express warranty claim.

■ We find adequate evidence to support the jury's further finding that the express warranty was breached and that this breach was a proximate cause of the accident. Warner & Swasey's District Manager testified that the backhoe was not in fact designed for the use to which it was put at the time of the accident. That was in effect an admission that Warner & Swasey had not complied with the warranty that the jury found existed, and permitted the jury to infer that the non-compliance was a proximate cause of the accident.

■ The effect of the intervening activity of Comad on Warner & Swasey's liability was properly left to the jury by Judge Mansfield who charged that a requisite of liability was the proximate causation of the accident by the backhoe's failure to conform to the warranty. Proximate cause was further de-

1. N.Y.Personal Property Law, McKinney's Consol.Laws c. 41, § 93, in effect at the time of this transaction, defines an express warranty as follows:

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon."

fined as "an effective competent producing cause" of the accident and injury. Warner & Swasey specifically designed the backhoe to be attached to the Front Loader and advertised this fact. Therefore, Warner & Swasey cannot disclaim liability under the warranty when the intended attachment is made by Comad, a distributor of the product. Comad's subsequent servicing, including the replacement of the stabilizers' piston rings, has no greater effect. Sylvestri complained immediately after receipt of the machine about the same sort of failure of the stabilizers that eventually caused the accident. In fact, it was these complaints that resulted in the servicing by employees of both Comad and Warner & Swasey. Under these circumstances, the jury was entitled to find as it did that any negligence on Comad's part was a concurrent and not an intervening superseding cause of the accident.

■ Warner & Swasey's argument that it should escape liability for breach of express warranty as a component part manufacturer is not persuasive. While the trial court held that the backhoe was a component part and therefore dismissed a claim of breach of implied warranty or strict tort liability against Warner & Swasey on the authority of Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963), the same result does not obtain for the claim of breach of express warranty.[2] The component part manufacturer in *Goldberg* escaped liability not because of lack of privity but because the New York Court of Appeals did not see fit to hold such parties liable under the principle of implied warranty or strict tort liability when the injured person could obtain adequate relief from the assembler. Here, however, the issue

is express warranty, a representation made by Warner & Swasey which induced plaintiff to purchase the unit containing the backhoe. See Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N. E.2d 399 (1962).

■ Warner & Swasey further contends that there is an inconsistency between the jury's finding of breach of express warranty in answer to a special interrogatory and its finding in answer to another special interrogatory that the backhoe as manufactured by Warner & Swasey was not defective and was reasonably fit to be used for the ordinary purpose for which it was designed or intended to be used.[3] When such a claim is made it is the duty of the court to reconcile the answers if possible under any view of the evidence in the case. Gallick v. Baltimore & O. R. R. Co., 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962); Morris v. Pennsylvania R. R. Co., 187 F.2d 837, 840 (2 Cir. 1951). In the present instance the jury could very well have accepted the testimony of Warner & Swasey's district manager that the machine was not in fact designed for Sylvestri's purpose and yet have found such a warranty expressed in the brochure.

*Negligence of Comad*

■ Comad's contention that the jury's finding of negligence on its part is not supported by the evidence is without merit. Testimony that Comad was called upon repeatedly to repair the backhoe for the same type of failure which eventually resulted in plaintiff's injuries and that Comad gave assurances that the backhoe was safe to use was

2. The correctness of the trial court's dismissal of the claim of breach of implied warranty is not before us for review, nor do we find it necessary for present purposes to reach the question of whether the backhoe is, in fact, a component part within the meaning of *Goldberg*.

3. The trial judge stated that he was submitting the latter interrogatory to the jury to determine whether in fact there was a basis for liability for breach of an implied warranty in case his dismissal of that claim was questioned on appeal.

sufficient to send the question of Comad's negligence to the jury and is adequate to uphold the jury's conclusion that Comad's negligence was a concurrent cause of the accident.

*Commencement of the Action Against Comad*

 Comad's primary contention is that Judge Wyatt erred in not granting its motion for judgment on the pleadings on the ground that the New York statute of limitations barred the action. The relevant facts with respect to this issue are stated in Judge Wyatt's opinion, 244 F.Supp. 524 (S.D.N.Y.1965) and may be briefly summarized here. The accident occurred on August 18, 1961 at Yonkers, N. Y. Plaintiff filed his complaint against Comad in the Southern District of New York on February 13, 1964. Although plaintiff could have served Comad, a New Jersey corporation authorized to do business in New York, by serving the Secretary of State of New York, plaintiff instead instructed the Marshal personally to serve Comad in New Jersey. Service was attempted on February 18, 1964 but was not completed because the Marshal was informed that Clark Equipment Co. had "taken Comad over on November 1, 1963." Plaintiff then directed service in New York upon Clark Equipment Co. as agent of Comad. This service was accomplished on March 23, 1964, within the 3 year New York statute of limitations period, CPLR § 214(5).

Comad filed an answer on April 13, 1964 which raised as a defense lack of personal jurisdiction on the ground that no valid personal service had been made. On September 14, 1964, after the three year statutory period had expired, Comad moved to vacate service of process on the same ground. This motion eventually was granted by Judge Murphy on April 16, 1965. The granting of the motion did not result in dismissal of the action because in the meantime, on October 22, 1964, plaintiff caused an additional summons and complaint to be served on the Secretary of State. This service was accomplished, however, not only after the expiration of the 3 year statute of limitations period but after the expiration of the 60 day grace period permitted by CPLR § 203(b) (4). Comad in its answer and by motion for judgment on the pleadings raised the defense of the statute of limitations.

The statute of limitations would not bar the suit if the definition of "commencement" of an action under Rule 3, Fed.R.Civ.P., is applicable to toll the statute of limitations rather than New York's definition. Rule 3, Fed.R.Civ. P., provides that an "action is commenced by filing a complaint with the court." CPLR § 203, on the other hand, provides that the statute of limitations is tolled when the claim is "interposed" and that "a claim asserted in the complaint is interposed * * * when the summons is served upon the defendant" or when it is delivered to the sheriff for service if it is served within sixty days after the limitations period would otherwise have expired.

Judge Wyatt, in ruling on Comad's motion for judgment on the pleadings, held that Ragan v. Merchants Transfer and Warehouse Co., 337 U.S. 530, 69 S. Ct. 1233, 93 L.Ed. 1520 (1949), which he felt, if still good law, would require application of CPLR § 203, had been overruled by Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), so that Rule 3, Fed.R.Civ.P., was applicable. In Graziano v. Pennell, 371 F.2d 761, 763 (2 Cir. 1967), we stated that "the passing of *Ragan* would bring no tears from us, * * * and an able district judge in this circuit thinks *Hanna* in fact administered the happy dispatch," citing Judge Wyatt's opinion below. We did not, however, reach the issue in *Graziano*, and reach it for the first time now. We agree with Judge Wyatt that in view of Hanna v. Plumer, supra, the federal rule as to the time of commencement of an action governs.

Ragan v. Merchants Transfer and Warehouse Co., supra, involved the Kansas statute of limitations and definition

of commencement of an action. As in New York, the Kansas statute defined commencement for purposes of the statute of limitations as the service of summons, and as here, timely commencement of the action hinged upon application of the federal standard. The Supreme Court held that the manner of commencement was an integral part of the Kansas statute of limitations, and, despite the existence of Rule 3, Fed.R.Civ. P., under Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), the application of the Kansas rule was proper in order to prevent recovery in the federal court where recovery was barred in the state court.

Hanna v. Plumer, supra, dealt with the question of whether service of process by delivery to an executor's place of residence, as permitted by Rule 4(d)(1), Fed.R.Civ.P., was effective in a diversity action where the otherwise applicable Massachusetts statute generally required in-hand service. The Supreme Court upheld service pursuant to the federal rule despite the Court's recognition that the choice of law was "outcome determinative." Chief Justice Warren, writing for the Court, stated that "[t]he 'outcome-determination' test * * * cannot be read without reference to the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." 380 U.S. at 468, 85 S.Ct. at 1142. But the Court went further by holding that even this interpretation of the "outcome determination" test was inapplicable where a federal rule covered a point in dispute.

"When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided *Erie* choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions." 380 U.S. at 471, 85 S.Ct. at 1144.

We recognize that the matter is far from certain. The Supreme Court not only did not specifically state in *Hanna* that it was overruling *Ragan*, but the Court several times cited *Ragan* by way of distinction. 380 U.S. at 462–63 n. 1, 469 n. 10, and 470 n. 12, 85 S.Ct. 1136. And Justice Harlan was speaking for himself when he stated that *Ragan*, if still good law, would require affirmance instead of reversal of the Court of Appeals. 380 U.S. at 476, 85 S.Ct. 1136 (concurring opinion). Thus a number of courts both within and without this Circuit, not without justification, have held that *Ragan* must still be followed. Groninger v. Davison, 364 F.2d 638 (8 Cir. 1966); Sylvester v. Messler, 351 F. 2d 472 (6 Cir. 1965), cert. denied, 382 U.S. 1011, 86 S.Ct. 619, 15 L.Ed.2d 526 (1966); Hendriksen v. Roosevelt Hospital, 276 F.Supp. 731 (S.D.N.Y.1967); O'Shea v. Binswanger, 42 F.R.D. 21 (D. Md.1967). But see Callan v. Lillybelle, Ltd., 39 F.R.D. 600 (S.D.N.Y.1966); Newman v. Freeman, 262 F.Supp. 106, 110–113 (E.D.Pa.1966). Nevertheless, *Hanna* does represent a modification, or at least a refinement, of the "outcome determination" test as applied in *Ragan*, and it does enunciate a policy favoring the supremacy of the Federal Rules which is not discussed in *Ragan*. Consequently, *Hanna* requires consideration of the factors underlying the choice between the state and federal rule rather than the automatic application of *Ragan*.

While in view of the comparison made in footnote 12 of *Hanna* between *Ragan* and Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), it is apparent that the Supreme Court is still willing to recognize some limits upon the application of Rule 3, it is also true that Rule 3 was designed to cover the issue of commencement for purposes of the statute of limitations at least in certain circumstances. In fact, the Supreme Court in its opinion in *Ragan*, 337 U.S. at 533, 69 S.Ct. 1233, specifically ap-

proved our decision in Bomar v. Keyes, 162 F.2d 136, 140–141 (2 Cir. 1947), which held that Rule 3 was to be applied along with the New York statute of limitations in an action under the federal Civil Rights Act, 42 U.S.C. § 1983. The question then is whether in light of the priority accorded to the federal rules in *Hanna* and in light of the "outcome determination" test as explained there, Rule 3 should be applied.

Application of Rule 3 definitely will not result in forum-shopping. A party first deciding to assert a claim after the expiration of the period prescribed by the New York statute of limitation will be precluded from doing so under the federal rule. On the other hand, one who is preparing to sue before the expiration of the statutory period will gain scant advantage from bringing the action in the federal court, particularly in view of the additional sixty day grace period afforded by the New York statute. The instant case is a good example. When the original complaint was filed there was more than sufficient time for the summons to be served before the expiration of the statutory period and therefore the possible availability of Rule 3 could not have played any part in plaintiff's choice of courts.

Similarly, application of Rule 3, rather than the New York rule, will not so change the character or result of the litigation as unfairly to discriminate against citizens of New York. While the actual outcome of litigation may in a few instances, as here, be different, it is clear that the character of the litigation will not be greatly changed. New York has no filing provisions such as are contained in Rules 3 and 5(d), Fed.R.Civ.P., and thus the New York rule has definite advantages with respect to the giving of notice only under New York procedure. Of course, in addition to the filing requirements of the federal rules, the plaintiff is under the duty, in view of Rule 4(a), Fed.R.Civ.P., to use due diligence in securing the issuance and service of the summons. See, e. g., Hukill

v. Pacific and Arctic Ry. & Nav. Co., 159 F.Supp. 571, 17 Alaska 498 (D. Alaska 1958); 2 Moore, Federal Practice ¶ 4.06–1 (2d ed. 1967). In the present instance, the defendant had actual notice of the action long before the three year period under the New York statute expired. It is also worthwhile to point out, as Judge Wyatt did, that it is the plaintiff who is a citizen of New York, not the defendant Comad.

An indication that application of the federal rule will not result in the alteration of substantive rights under New York law is New York's own approach to its definition of commencement as a procedural rule. Thus, New York has followed its definition where it has applied another state's statute of limitations, Drummy v. Oxman, 280 A.D. 800, 113 N.Y.S.2d 224, 225 (1952), and where it has applied a federal statute of limitations with respect to a federally created cause of action. Irons v. Michigan-Atlantic Corp., 279 App.Div. 32, 108 N.Y. S.2d 824 (1952). See Myers v. Slotkin, 13 F.R.D. 191 (E.D.N.Y.1952). New York itself does not consider its rule either to abridge or enlarge a cause of action.

Under all these circumstances we conclude that Rule 3, Fed.R.Civ.P., is the proper measure of the commencement of this action for purposes of the statute of limitations and that therefore the action was timely commenced against Comad.

*Damages*

■ Both Warner & Swasey and Comad argue that the jury returned a grossly excessive verdict of $25,000 as a result of the trial court's improper admission of evidence as to the rate of pay of a union machine operator. We do not consider the verdict as grossly excessive. Compare LaFrance v. New York, N. H. & H. R. R. Co., 292 F.2d 649 (2 Cir. 1961), with Grunethal v. Long Island R. R. Co., 388 F.2d 480 (2 Cir. 1968), cert. granted, 391 U.S. 902, 88 S.Ct. 1651, 20 L.Ed.2d 416. Nor do we agree that the trial court erred in its admission of evidence or charge with respect to dam-

ages. Sylvestri suffered a fractured wrist in the accident which has resulted in a continuing disability of the wrist due to degenerative arthritis and pain. As a result Sylvestri can no longer operate the control levers of the backhoe. While Sylvestri's counsel attempted to introduce into evidence the pay scale of a union operator on the ground that Sylvestri's corporation had to hire an additional man to replace Sylvestri, Judge Mansfield specifically instructed the jury to consider that evidence only in connection with probable future loss of earnings by the plaintiff. Since it was shown that Sylvestri was trained as, and acting in the capacity of, such an operator at the time of his accident but could no longer perform this type of work, the pay scale is a direct indicator of Sylvestri's potential loss of future earnings even though he continued to receive a fixed salary from his own company.

*Warner & Swasey's Cross-claim Against Comad*

Finally, Warner & Swasey contends that if it is held liable to Sylvestri, then contrary to the opinion of the trial judge, it should obtain indemnity from Comad. For the reasons stated by Judge Mansfield in dismissing Warner & Swasey's cross-claim, this contention is without merit. Under New York law a passive wrong-doer eligible to obtain indemnity from an active wrong-doer is defined as one held strictly liable without actual fault. Bush Terminal Bldgs. Co. v. Luckenbach S.S. Co., 9 N.Y.2d 426, 430, 214 N.Y.S.2d 428, 431, 174 N.E.2d 515, 518 (1961). Warner & Swasey's liability arises from its breach of an express warranty which by definition is an affirmation voluntarily made as an inducement to the buyer. The liability is not imposed by law and does not depend on Comad's negligence which the jury found to be but a concurrent cause of the accident. Rather, liability depends on Warner & Swasey's failure to conform to its own representations. Thus, Warner & Swasey stands *in pari delicto* with Comad and is not entitled to indemnity.

The judgment of the district court is affirmed as to both appellants in all respects.