Julio D. VARELA, Appellant,

v.

HI–LO POWERED STIRRUPS, INC., Underwriters Laboratories, Inc., First Virginia Leasing Co., Will-Burt Co., National Restoration Corp., and A.A. Ladder & Supply Corp., Appellees.

No. 79–477.

District of Columbia Court of Appeals.

Argued en banc June 9, 1980.

Decided Oct. 28, 1980.

Wayne M. Mansulla, Washington, D. C., for appellant.

Richard W. Galiher, Washington, D. C., for Hi-Lo Powered Stirrups, Inc.

James I. Serota, Chicago, Ill., for Underwriters Laboratories, Inc.

John T. Coyne and William J. Carter, Washington, D. C., filed a brief for First Virginia Leasing Co.

Edward J. Gorman, Jr., Washington, D. C., with whom Audrey F. Gorman, Washington, D. C., was on brief, for Will-Burt Co.

Edwin A. Sheridan, Fairfax, Va., for Nat. Restoration Corp.

David P. Durbin, Washington, D. C., filed a brief for A.A. Ladder and Supply Corp.

Before NEWMAN, Chief Judge, and KELLY, KERN, GALLAGHER, NEBEKER, HARRIS, MACK and FERREN, Associate Judges.

NEWMAN, Chief Judge:

We consider in this case the question of what interpretation is to be given to Super. Ct.Civ.R. 3 (hereinafter Rule 3); more specifically, we must decide whether the filing of a complaint, without more, tolls the applicable statute of limitations. The pertinent facts of this case are simple: appellant Varela filed his complaint *before* the statutory period of limitations ran but did not attempt service (by certified mail) until three days *after* the period had run.[1] The trial court granted appellees' motion to dismiss this action based on the statute of limitations.

In Part I of this opinion we discuss the evolution and previous interpretations of Rule 3 and its predecessors. In Part II, we analyze present Rule 3, and the history and theory of Rule 3's identical federal counterpart, Fed.R.Civ.P. 3 (hereinafter Fed.R. 3), as well as their interrelationships with their respective Rule 4. In Part III, we analyze the decisions from those eight federal circuit courts of appeals which have dealt with the interpretation of Fed.R. 3. Finally, in Part IV, we hold that Rule 3 requires only the filing of a complaint to commence an action and thereby toll the statute of limitations; any questions as to lack of diligence on the part of a plaintiff in obtaining service of process are to be addressed by a motion filed pursuant to Super.Ct.Civ.R. 41(b). We reverse and remand to the trial court.

I

Rule 3, which is identical to Fed.R. 3, states:

A civil action is commenced by filing a complaint with the court.

The District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L.No. 91–358, title I, § 111, 84 Stat. 487 (1970), codified at D.C.Code 1973, § 11–946 (hereinafter the Court Reform Act) provided for the "adoption of the Federal Rules [of Civil Procedure (hereinafter the Federal Rules)] for use in the newly formed Superior Court." *Rieser v. District of Columbia,* 188 U.S.App.D.C. 384, 394, 580 F.2d 647, 657 (1978). While, as the court noted in *Rieser,* "the Federal Rules ... from their inception have applied in all of the District of Columbia Courts, local and federal," *id.* at 392, 580 F.2d at 655, the fact is that, prior to 1970, under the Municipal Court Act, D.C.Code 1940 Supp., § 11–756(b), the rules adopted by the local courts only were required to " 'conform *as nearly as may be practicable* to the forms, practice, and procedure ... [then] obtaining under the Federal Rules of Civil Procedure.' " *Taylor v. Yellow Cab Co. of D.C.,* D.C.Mun.App., 53 A.2d 691, 692 (1947) (emphasis added), quoting D.C.Code 1940 Supp., § 11–756(b).

Prior to the implementation of the Federal Rules, the court in *Maier v. Independent*

---

1. Appellant's suit was for personal injuries allegedly suffered, as a result of appellees' negligence, while working at a construction site. D.C.Code 1973, § 12–301(8) provides a three-year statute of limitations for negligence actions. A full chronology of the pertinent events of this case appears in the panel opinion. *Varela v. Hi-Lo Powered Stirrups, Inc.,* D.C. App., 412 A.2d 13 (1980), which was vacated by our en banc order.

*Taxi Owner's Ass'n*, 68 App.D.C. 307, 96 F.2d 579 (1938), held that *"[h]aving regard to the local custom*, we think the proper rule to be applied in the District of Columbia is that when a bill or declaration is filed and subpoena issued and delivered to the marshal for service before the statute has run, the statute is tolled." *Id.* at 310, 96 F.2d at 582 (emphasis added).[2]

The first case in the District of Columbia, decided after the effective date of the Federal Rules of Civil Procedure, which addressed the question of the interpretation of Fed.R. 3 was *Reynolds v. Needle*, 77 U.S. App.D.C. 53, 132 F.2d 161 (1942), where the United States Court of Appeals stated succinctly that: "[t]his [the filing of the complaint] commenced the action. Rule 3 . . .," *id.* at 54 n.1, 132 F.2d at 162 n.1, thereby implying that such commencement tolled the statute of limitations. In *Clark v. Keesee*, D.C.Mun.App., 136 A.2d 394 (1957), we explicitly acknowledged that "[t]he *Maier* case was modified by the adoption of Rule 3 of the Federal Rules. . . . The *Reynolds* case did not involve any problem of diligence and only stands for the proposition that an action is commenced upon the filing of the complaint." *Id.* at 396–97. However, eleven years later, in *Criterion Insurance Co. v. Lyles*, D.C.App., 244 A.2d 913 (1968), we virtually ignored the changes wrought by Fed.R. 3, by *Reynolds*, and by *Clark*, and reaffirmed the earlier interpretation of the local rule as established by *Maier* and *Huysman*:

> Taking cognizance of this *local custom*, courts in this jurisdiction have developed the rule that an action is "commenced" when the complaint is filed and the summons is issued and delivered to the Marshal for service. Ordinarily, the applicable statute of limitations stops running at this point. Our rule . . . [is] based upon the principle that *an action commences when a plaintiff has done all that is incumbent upon him toward the issuance and service of process. Since local custom places an extra obligation upon the initiator of a civil action*, the statute of limitations ordinarily does not cease to run until that obligation is fulfilled. [*Id.* at 914 (emphasis added) (footnote omitted) (citations omitted).]

Two points should be noted concerning the opinion in *Criterion*: first, it is clear from the above passage that the court accepted the common sense notion that "commencement" of an action implied the tolling of the statute of limitations. Secondly, the court also made clear the fact that the "extra obligation" placed on a plaintiff in order to toll the statute of limitations—of delivering the summons to the marshal for service—was derived from local custom, and was now being read into the plain language of Rule 3, *i. e.*, the additional obligation did not derive from the underlying language of the rule itself.

The Court Reform Act was passed two years after *Criterion*. Exercising its "plenary" power to legislate for the District of Columbia under Art. I, § 8 cl. 17 of the Constitution, *see Palmore v. United States*, 411 U.S. 389, 397, 93 S.Ct. 1670, 1676, 36 L.Ed.2d 342 (1973); *Rieser v. District of Columbia, supra* 188 U.S.App.D.C. at 388, 580 F.2d at 651, the Congress mandated the Federal Rules for use in the new Superior Court. *Id.*, 188 U.S.App.D.C. at 394, 580 F.2d at 657. D.C.Code 1973, § 11–946, states in part:

> The Superior Court shall conduct its business according to the Federal Rules

---

2. *Maier* distinguished *Huysman v. Newspaper Company*, 12 App.D.C. 586 (1898), where it was held that "the mere filing of the declaration without service of process *and without intention to have it served* was insufficient to stop the running of the statute, though we also said that when a plaintiff has filed his declaration and has done all that is incumbent on him to have process issued and served . . . the lack of issue or service in the circumstances [where the marshal or clerk is not diligent] is not fatal." *Maier, supra*, 68 App.D.C. at 309, 96 F.2d 579 (emphasis added). It was unclear in *Huysman*, as *Maier* recognized, whether the court's determination that the filing attorney had never intended to go ahead with the suit, and had in fact later withdrawn his declaration, was controlling of the issue of whether the statute of limitations had been tolled. *Maier* itself addressed a much less complex question and the court's opinion accordingly did not contain the ambiguities that *Huysman* had.

of Civil Procedure ... unless it prescribes or adopts rules which modify those Rules. Rules which modify the Federal Rules shall be submitted for the approval of the District of Columbia Court of Appeals, and they shall not take effect until approved by that court.[3]

The legislative history of § 11–946 reflects the congressional intent that the local courts were to be governed by the *federal* rules, and not by local rules or custom, such as the court had relied on in reaching its decisions in *Criterion* and *Maier*. The Senate report on the Court Reform Act makes this intention explicit:

> This section [§ 11–946] states a clear preference for the use of the Federal rules at both the trial and the appellate levels of the local court system. Unless there is a particular need for deviation from the Federal rules because of the peculiar local jurisdiction or because of the particular exigencies of the local situation, it is expected that the Federal rules shall be followed. [S.Rep.No. 405, 91st Cong., 1st Sess. 21 (1969).]
>
> The new section 11–946 requires the Superior Court to conduct its business according to the Federal rules unless the court *affirmatively prescribes* modifications thereof. All modifications are to be approved before taking effect by the District of Columbia Court of Appeals. [*Id.* at 24 (emphasis added).]

*See also* H.R.Rep. No. 907, 91st Cong.2d Sess. 44, 138 (1970).

## II

Appellees contend that both the legislative history of Fed.R. 3, and the interpretation that has been placed on that Rule by the various federal circuit courts, all indicate that both Federal and Super.Ct.Civ.R. 3 must be read in conjunction with their Rule 4(a) counterparts. In particular, appellees argue that while the federal courts have uniformly held that an action commences upon the filing of a complaint, this

has only been because under Fed.R. 4(a), unlike Super.Ct.Civ.R. 4(a), once a complaint is filed, the clerk of the court automatically delivers the summons to the marshal for service; *i. e.*, once the complaint has been filed, the plaintiff has done all that is incumbent upon him to do. For tolling purposes, he will not be charged with any delay in service that may result from a lack of diligence on the part of the clerk or marshal. Once all that is left to be done are "ministerial" acts entrusted to court personnel, the statute is tolled. Appellees argue that since the District provides for service not only by the marshal, but also by a plaintiff himself—and in fact it is highly common for a plaintiff to elect to serve process other than by use of the marshal in the District—where a plaintiff takes it upon himself to serve process, he should not be held to have effectively tolled the limitations period until he has "placed the process in the proper channel for service and has done *all* that is incumbent on him to ensure prompt service, without being penalized for lack of diligence by the marshal or postman, over whom plaintiff has no control." *Hall v. Cafritz*, D.C.App., 402 A.2d 828, 832 (1979).

We reject appellees' argument for several reasons: (1) the plain, unambiguous language of Rule 3; (2) the clear intention of the Advisory Committee as revealed by the history of the development of Fed.R. 3; (3) the recognition by the Supreme Court of the independent significance of the manner of commencement of an action, as opposed to the manner of service of process; (4) the clear and persuasive evidence of the intended interaction between Federal (and Superior Court) Rules 3 and 4 provided by the recent revisions to Fed.R. 4; and (5) the uniform interpretation placed on Fed.R. 3 by the federal circuit courts of appeals.

"The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *United States v. Gold-*

---

**3.** We note that Super.Ct.Civ.R. 3 has not been modified since its adoption and continues to be identical to Fed.R. 3.

*enberg,* 168 U.S. 95, 102–03, 18 S.Ct. 3, 4, 42 L.Ed. 394 (1897).

Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion.

Statutory words are uniformly presumed, unless the contrary appears, to be used in their ordinary and usual sense, and with the meaning commonly attributed to them.

Reports to Congress accompanying the introduction of proposed laws may aid the courts in reaching the true meaning of the legislature in cases of doubtful interpretation. But, as we have already said, and it has been so often affirmed as to become a recognized rule, when words are free from doubt they must be taken as the final expression of the legislative intent, and are not to be added to or subtracted from by considerations drawn from titles or designating names or reports accompanying their introduction, or from any extraneous source. In other words, the language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent. [*Caminetti v. United States,* 242 U.S. 470, 485–86, 490, 37 S.Ct. 192, 194, 196, 61 L.Ed. 442 (1917) (citations omitted).]

*See also Crooks v. Harrelson,* 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156 (1930); *United States v. Young,* D.C.App., 376 A.2d 809 (1977); *United States v. Stokes,* D.C.App., 365 A.2d 615 (1976); *General Motors Acceptance Corp. v. One 1962 Chevrolet Sedan,* D.C. App., 191 A.2d 140 (1963); *DeRuiz v. DeRuiz,* 66 App.D.C. 370, 88 F.2d 752 (1936); *Coombe v. United States ex rel. Selis,* 55 App.D.C. 190, 3 F.2d 714 (1925). However, while

[t]he plain meaning of the words is generally the most persuasive evidence of the intent of the legislature . . . the plain meaning rule has limitations. It has long been recognized that the literal meaning of a statute will not be followed when it produces absurd results. And since the judicial function is to ascertain the legis-

lative intention the Court may properly exercise that function with recourse to the legislative history, and may depart from the literal meaning of the words when at variance with the intention of the legislature as revealed by legislative history. [*District of Columbia National Bank v. District of Columbia,* 121 U.S. App.D.C. 196, 198, 348 F.2d 808, 810 (1965) (citations omitted). *See also Davis v. United States,* D.C.App., 397 A.2d 951 (1979).]

■ In interpreting Rule 3 we must keep in mind that "if a Superior Court rule is identical to or substantially identical to a corresponding federal rule, it would have, just as the federal rule, the force and effect of law." *In re C.A.P.,* D.C.App., 356 A.2d 335, 343 (1976), *citing Campbell v. United States,* D.C.App., 295 A.2d 498, 501 (1972). Accordingly, we may utilize the same methods of statutory construction in interpreting the procedural rule as we would use in interpreting the meaning of a statute, or act, passed by the Congress, or the District Council, respectively; *i. e.,* we look to the plain meaning of the words, to the legislative history, and to the interpretations that have been placed on the rule by other courts.

The language of Rule 3 is simple, plain, and unambiguous. "A civil action is commenced by filing a complaint with the court." As we have previously noted, the commencement of an action has normally been understood to indicate that the applicable statute of limitations is thereby tolled. Following the dictates of *Caminetti v. United States, supra,* and applying the plain meaning doctrine, it would seem clear that, under Rule 3, the mere filing of a complaint, without more, tolls the statute of limitations.

We find the reasoning of *McCrea v. General Motors Corp.,* 53 F.R.D. 384, 385 (D.Mont.1971), *quoted in part in* 4 C. Wright and A. Miller, Federal Practice and Procedure § 1056 at 24 (Supp.1979) persuasive:

[W]hen the complaint was filed the statute of limitations was tolled and remained tolled notwithstanding the failure to serve the summons with diligence. I do not think that the very simple language of rule 3 which tells a plaintiff what he must do should be altered by *incorporating into it the requirements of* [Federal] Rule 4(a) which is cast in terms of the obligations of the clerk of the court and the process server.

I prefer the certainty which a literal application of Rule 3 brings to limitations problems to the uncertainty created by a read-in requirement that there be reasonable diligence in the service of process. I think that a failure to serve process should be treated as a failure to prosecute under Rule 41(b).[5] [Footnote 5 states: "The history of the rules supports this position", *citing Messenger v. United States, infra* and 2 J. Moore's Federal Practice ¶ 4.06–1 (2d ed. 1953).]

*See also Harrison v. Kovats,* 224 F.Supp. 581 (W.D.1963) (all actions within purview of Federal Rules are commenced by filing of complaint, regardless of whether service is to be made personally or otherwise).

The rationale behind the literal interpretation placed on Fed.R. 3 in *McCrea* was delineated in the Eighth Circuit's opinion in *Moore Co. of Sikeston, Mo. v. Sid Richardson Carbon & Gas Co.,* 347 F.2d 921 (8th Cir. 1965), *cert. denied,* 383 U.S. 925, 86 S.Ct. 927, 15 L.Ed.2d 845 (1966). There the court first quoted the Supreme Court's opinion in *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962):[4]

When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply. The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitation were

intended to insure. [*Quoted in Moore Co., supra* at 924.]

The court later went on to state:

No reasonable basis exists for engrafting upon the rule or statute a condition that summons be served with diligence. If Congress or the rule makers had intended to impose such condition [of due diligence], it would have been a simple matter to include the condition by appropriate language in the rule or the statute. As heretofore pointed out, the Rules Committee chose not to impose any such condition. [*Moore Co., supra* at 925.]

The court's analysis in *Moore Co.* offers a powerful and, we think, persuasive interpretation of the proper relationship between the three.

The history of the Rules' evolution bears out the conclusion reached by the Supreme Court. In an oft–quoted synopsis of the history of the Rules, the court in *Messenger v. United States,* 231 F.2d 328 (2d Cir. 1956), said:

Rule 3 clearly provides "A civil action is commenced by filing a complaint with the court." When the rules were being formulated and preliminary drafts were circulated and debated by the bench and bar throughout the country, it was at first proposed that the action should abate unless personal jurisdiction by service of process was acquired within 60 days. An alternative proposal was that the action should abate for failure to serve process within 60 days "unless within that period the court for good cause shown extends the time for service." See Preliminary Draft of Rules of Civil Procedure (May, 1936). In the end, however, no time was specified for the service of process, *the Advisory Committee noting that the motion sanctioned by Rule 41(b) provided "a method available to attack unreasonable delay in prosecuting an action after it has been commenced."* See Report of the Advisory Committee Con-

---

**4.** The issue presented in *Goldlawr* concerned the authority of a District Court, in which an action was brought but where venue was improper, to transfer the case to a District where

venue lay, without first obtaining personal jurisdiction over the defendants. The Court held that such a transfer was proper.

taining Proposed Rules of Civil Procedure, p. 4 (April, 1937). [*Id.* at 329 (emphasis added).]

Similarly, in interpreting the history of ·Fed.R. 3, the court in *United States v. Wahl*, 583 F.2d 285 (6th Cir. 1978), concluded:

> To be sure, a literal reading of Rule 3 varies the common law rule under which both the filing of the complaint, *and the exercise of due diligence in obtaining service* were required in order to toll the limitations period. However, the history of the promulgation of Rule 3 demonstrates that a modification of the common law was fully intended by the Advisory Committee. [*Id.* at 289.]

As explicated in 4 C. Wright and A. Miller, Federal Practice and Procedure, *supra* at § 1051:

> The theory of Rule 3 is that a law suit is a matter of public record and that certainty with regard to fixing the time a suit is instituted is valuable for a number of purposes. For example, establishing the date of commencement is important for determining whether the action has been brought prematurely; *whether it is barred by the applicable statute of limitations* or by laches; which of two or more courts in which actions involving the same parties and issues have been instituted should retain the case for disposition absent special considerations; whether after-accruing claims and defenses may be litigated; and whether personal jurisdiction, diversity jurisdiction, and proper venue exist. [*Id.* § 1051 at 165–66 (emphasis added) (footnotes omitted).]

We find additional confirmation of the intended divisibility of Fed.R. 3 and 4(a) in the decisions in *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); and *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949). As we have seen in *Ragan*, the Court, in deciding that compliance with Fed.R. 3 did not serve to toll the *state* statute of limitations in a diversity action, held that

> [W]e look to local law to find the cause of action on which suit is brought. Since that cause of action is created by local law, the measure of it is to be found only in local law.... It accrues and comes to an end when local law so declares. [*Id.* at 533, 69 S.Ct. at 1234 (citations omitted).]

However, the decision in *Hanna v. Plumer* seriously called into question the continuing validity of *Ragan*. In *Hanna* the Court held "that in a civil action in a federal court, where jurisdiction is based upon diversity of citizenship, service of process shall be made in the manner set forth in the Federal Rules of civil Procedure, Rule 4(d)(1), rather than in the manner prescribed by state law. "While citing and referring to *Ragan*, the Court very carefully avoids overruling its holdings. *Groninger v. Davison*, 364 F.2d 638, 642 (8th Cir. 1966) (explicating *Hanna*). Other circuits, however, such as the Second, *see Sylvestri v. Warner & Swasey Co.*, 398 F.2d 598 (2d Cir. 1968), disagreed, and concluded that *Hanna* had in fact overruled *Ragan*. Not until *Walker v. Armco Steel Corp.*[5] reaffirmed the continued vitality of *Ragan*, while carefully delineating the different considerations implicit in *Hanna*, was the controversy resolved.

What has emerged is a clear understanding that the manner by which an action is *commenced*, and thereby the statute of limitations is tolled, presents a completely different and separable array of consid-

---

5. At oral argument, appellees urged that *Walker v. Armco Steel Corp.* controls the issue sub judice. *Walker* only dealt with the question of whether the federal rule should be applied to toll state statute of limitations in diversity cases. It in no way indicated that the federal circuits were other than correct in holding that, in a suit predicated on a *federally created cause of action*, the filing of a complaint tolls the statute of limitations. The present case is directly analogous to the latter situation: we are here applying our own tolling provision in an action involving our own, *i. e.*, District of Columbia law. The suggested comparability of the diversity cases is inapposite.

erations from the manner by which *service of process* is to be made. In this regard it is important to note that Rule 4 of the Fed.R. of Civ.P. has just recently been amended to provide in pertinent part that:

> Service of process may also be made by a person authorized to serve process in an action brought in the courts of general jurisdiction of the state in which the district court is held or in which service is made. [Fed.R.Civ.P. 4(c), effective August 1, 1980.]

This new revision is intended to clear up the ambiguity between Fed.R. 4(c), which previously authorized service by the marshal, his deputy, or by a person specially appointed by the court; and Fed.R. 4(d)(7), which authorizes service in certain cases "in the manner prescribed by the law of the state in which the district court is held. . . ." As the Advisory Committee on Federal Civil Rules noted:

> State statutes and rules of the kind referred to in Rule 4(d)(7) and Rule 4(e) commonly designate the persons who are to make the service provided for, e. g., a sheriff or a plaintiff. When that is so, may the persons so designated by state law make service, or is service in all cases to be made by a marshal or by one specially appointed under present Rule 4(c)? The commentators have noted the ambiguity and have suggested the desirability of an amendment." [Advisory Committee Note, *reprinted at* 617 F.2d Advance Sheet No. 2, pp. 4–5 (citations omitted).]

In accordance with the amendment to Fed.R. 4(c), Fed.R. 4(a) has also been amended so as to read in pertinent part:

> Upon the filing of the complaint the clerk shall forthwith issue a summons and deliver it for service to the marshal *or to any other person authorized by Rule 4(c)* to serve it. (Emphasis added).[6]

The revisions were made without any reference to Fed.R. 3 or to the fact that the federal circuits have uniformly interpreted Fed.R. 3 only to require the filing of a complaint to commence an action and to toll the statute of limitations. If there had been any intention to affect a change in the requirements for tolling the statute of limitations in a federal action, it would have been an easy—and logical—matter for the revisions, or the accompanying Committee notes, to have contained such a reference or clarification.[7] There having been none, we can only posit that the committee and the Supreme Court recognized that compliance with Fed.R. 4 was never intended to be read in as a qualification to Fed.R. 3, that in fact Fed.R. 3 provides an easily applicable, clearly understood rule for tolling the statute of limitations in cases involving federal causes of action, and that any later failure of service of process could be dealt with under the due diligence requirements of Fed.R. 41(b).

### III

We turn now to a consideration of the interpretation which has been placed on Fed.R. 3 by the various federal circuit courts of appeal. "While this court is not bound in its interpretation of the Superior Court Rules by the federal courts' interpretation of the Federal Rules, we may find the decisions to be analogous authority for our interpretation of the essentially identical provisions." *Bazata v. National Ins. Co. of Washington,* D.C.App., 400 A.2d 313, 314 n.1 (1979). "[T]he federal courts' interpretations of federal rules essentially identical or similar to our rules . . . may be accepted as persuasive authority in interpreting our rules." *Tupling v. Britton,* D.C.App., 411 A.2d 349, 351 (1980) (citations omitted).

---

**6.** We note that the Civil Rules of the Superior Court have so far not been amended to reflect the changes in Fed.R. 4 which came into effect on August 1, 1980. *see* the Memorandum of this court dated July 3, 1980, staying the effectiveness of this change at the request of the Superior Court.

**7.** If there was any question before, it is now clear that service of process may be made in

exactly the same manner in both the local and the federal courts in the District of Columbia; this includes service by mail, under Fed.R. 4(d)(7), and Super.Ct.Civ.R. 4(c)(3). *See* Amendments to Rules, Appendix A, Memorandum from Walter R. Mansfield, Chairman, Advisory Committee on Civil Rules, *reprinted in* 617 F.2d Advance Sheet No. 2 at 18, 20.

See also Corley v. United States, D.C.App., 416 A.2d 713 (1980); Sellars v. United States, D.C.App., 401 A.2d 974, 978 (1979); Walden v. United States, D.C.App., 366 A.2d 1075, 1077 n.1 (1976); Campbell v. United States, D.C.App., 295 A.2d 498, 501 (1972). Compare West v. United States, D.C.App., 346 A.2d 504, 506 (1975).

In all instances where a statute of limitations question has arisen in the context of a suit involving a federally-created cause of action, the eight federal circuit courts of appeals which have addressed the question have uniformly interpreted Fed.R. 3 to require only the filing of a complaint to commence the cause of action and thereby toll the applicable statute of limitations. See Walko Corp. v. Burger Chef Systems, Inc., 180 U.S.App.D.C. 306, 554 F.2d 1165, 1167 & n.19 (1977); Reynolds v. Needle, supra 77 U.S.App.D.C. at 54 n.1, 132 F.2d supra at 162 n.1; United States v. Wahl, supra 583 F.2d at 287 ("[L]iteral compliance with Rule 3, F.R.Civ.P., is sufficient to interrupt the running of a federal statute of limitations" (footnote omitted)); International Controls Corp. v. Vesco, 556 F.2d 665, 669 (2d Cir. 1977), cert. denied, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978); Windbrooke Development Corp. v. Environmental Enterprises, Inc. of Fla., 524 F.2d 461 (5th Cir. 1975); Dewey v. Farchone, 460 F.2d 1338, 1340 (7th Cir. 1972); Metropolitan Paving Co. v. International Union of Operating Engineers, 439 F.2d 300, 306 (10th Cir. 1971) ("In such cases [where the 'right sought to be enforced is ... a federally created right'], as opposed to another possible result in some diversity cases, the filing of the complaint commences the action and tolls the applicable statute of limitations" (citations omitted)); Sylvestri v. Warner & Swasey Co., supra 398 F.2d at 604–06; Moore Co. of Sikeston, Mo. v. Sid Richardson Carbon and Gas Co., supra at 347 F.2d 922–23; Hoffman v. Halden, 268 F.2d 280, 302 (9th Cir. 1959), overruled on other grounds in Cohen v. Norris, 300 F.2d 24, 30 (1962). ("The filing of the complaint in the district court tolls the statute of limitations where the action is to enforce, as here, a federally created right" (citations omitted)); Messenger v. United States, supra, 231 F.2d at 329;

Bomar v. Keyes, 162 F.2d 136, 140, 141 (2d Cir. 1947); Isaacks v. Jeffers, 144 F.2d 26, 28 (10th Cir.), cert. denied, 323 U.S. 781, 65 S.Ct. 270, 89 L.Ed. 624 (1944). Contra, Application of Royal Bank of Canada, 33 F.R.D. 296 (S.D.N.Y.1963); L.G. DeFelice & Son, Inc. v. Globe Indemnity Co., 23 F.R.D. 275 (S.D.N.Y.1959). See also C. Wright & A. Miller, supra, 1056 at 177–78 (1969). Appellees, however, contend that the difference in Fed.R. 4 and Super.Ct.Civ.R. 4 compel a different result here.

Appellees seek to avoid the import of these decisions by arguing that since, by reading Rules 3 and 4(a) together, the only acts left to be done after the filing of a complaint are ministerial in nature, there are no further requirements necessary to cause the statute of limitations to be tolled: this is because the plaintiff will then have done all that it is incumbent upon him to do to place the summons in the proper channels for service; accordingly he will not be charged with any lack of diligence on the part of the marshal or the clerk. However, appellees conclude, the opinions clearly demonstrate that if some other manner of service were to be allowed under the Federal Rules, such as service by plaintiff himself, a due diligence requirement, independent of Rule 41(b), would have to be read into the plain language of Rule 3.

We reject this contention. As the court in Moore Co. itself acknowledged, and as we have previously discussed, the language of Rule 3 is "plain, clear, well-understood, and unambiguous...." Id. at 922. Furthermore, Moore Co. states that "[i]t appears to us that Rule 41(b) provides adequate protection against unreasonable delay in serving process or in prosecuting the suit." Id. at 923. Moore Co.'s statement concerning the Advisory Committee's objective in placing the burden of service on the clerk and marshal is inapposite for, as we have discussed in the previous section of this opinion, that concern involved the problem of whether federal or state commencement rules would apply in diversity cases.

■ We agree with Messenger v. United States, supra 231 F.2d at 329, that filing tolls the statute of limitations; that

after the filing of the complaint, the action remains pending in an inchoate state until service is completed unless and until the action is dismissed for failure to prosecute under Rule 41(b). The same holding is implicit in *Munro v. United States*, 303 U.S. 36 [58 S.Ct. 421, 82 L.Ed. 633] . . . and *Bates Mfg. Co. v. United States*, 303 U.S. 567 [58 S.Ct. 694, 82 L.Ed.2d 1020]. . . . "

The proper relationship between Rules 3, 4(a), and 41(b) was expressed in *Sylvestri v. Warner & Swasey Co., supra*:

> Of course, in addition to the filing requirements of the federal rules, the plaintiff is under the duty in view of Rule 4(a), Fed.R.Civ.P., to use due diligence in securing the issuance and service of the summons. [*Id.* at 606 (citations omitted).]

*Sylvestri* reflects the understanding that, while Rule 4 places the plaintiff under a burden of using due diligence to secure service of process, the remedy for failure to use such diligence is not a retrospective determination that the statute of limitations was never tolled, made under a read-in qualification to the plain language of Rule 3, but rather is available through the orderly procedure established by Rule 41(b). Such an interpretation provides a certainty to limitation problems and fully comports with the plain language, theory, and history of the development of Rule 3. We are confident that, in addressing the interrelationship between Rules 3 and 4(a), the federal circuits have been fully aware that they were speaking within the context of Rule 41(b). *See, e. g., Windbrooke, supra* (although first saying that filing tolls the statute of limitations, "especially . . . where there has been no lack of diligence in obtaining service of process", *id.* at 463, the court later talks of such lack of diligence in so obtaining service as being the grounds for dismissal under Rule 41(b)).

## IV

## CONCLUSION

■ Having examined the plain words, theory, history, and evolution of Super.Ct. Civ.R. 3 and its identical Federal counterpart, we hold that Super.Ct.Civ.R. 3 requires only the filing of a complaint to commence an action and thereby toll the statute of limitations; any questions as to a lack of diligence on the part of a plaintiff in obtaining service of process are to be addressed by means of a motion filed pursuant to Super.Ct.Civ.R. 41(b). We overrule our prior decisions in conflict herewith.

*Reversed and remanded to the trial court for appropriate action.*