In re Howard L. GREENSPAN, Respondent,

In re Leslie D. Silverman, Respondent.

Members of the Bar of the District of Columbia Court of Appeals (Bar Registration Nos. 266668 & 448188).

Nos. 02–BG–1350, 04–BG–73.

District of Columbia Court of Appeals.

Argued Oct. 4, 2005.
Decided Nov. 9, 2006.

John T. Rooney, Assistant Bar Counsel, and Joyce E. Peters, Bar Counsel at the time the brief was filed, for the Office of Bar Counsel, in No. 02–BG–1350.

John T. Rooney, Assistant Bar Counsel, and Wallace E. Shipp, Jr., Bar Counsel, for the Office of Bar Counsel, in No. 04–BG–73.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.*

Before RUIZ and REID, Associate Judges, and SCHWELB,** Senior Judge.

---

* The Board did not file briefs in these cases, but presented oral argument at the request of this court.

** Judge Schwelb was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on June 24, 2006.

REID, Associate Judge:

These consolidated cases, involving reciprocal discipline of two members of the District of Columbia Bar, respondents Howard L. Greenspan and Leslie D. Silverman, require us to determine whether the Massachusetts Board of Bar Overseers and the Attorney Grievance Commission of Maryland are "disciplining court[s]" within the meaning of D.C. Bar Rule XI, § 11(a) (2005). We hold that neither the Massachusetts Board of Bar Overseers nor the Attorney Grievance Commission of Maryland is a "disciplining court" under D.C. Bar Rule XI, § 11(a) (2006); and that before reciprocal discipline may be imposed by this court for professional misconduct in another jurisdiction, an attorney admitted to practice in this jurisdiction must have been disciplined by a disciplining court outside the District, or by another court in the District. Therefore, we dismiss the reciprocal disciplinary proceeding against Mr. Greenspan. In Ms. Silverman's case, in conformity with the Board's recommendation, we dismiss the reciprocal proceeding against her; however, we adopt the Board's recommendation that, in the original discipline case, Ms. Silverman be publicly censured.

## FACTUAL SUMMARY

### Respondent Howard Greenspan

Mr. Greenspan was admitted to the District of Columbia Bar on May 18, 1979, and later became inactive. He was also admitted to the Massachusetts Bar where he remained active. On April 10, 2000, the Commonwealth of Massachusetts Board of

Bar Overseers of the Supreme Judicial Court of Massachusetts ("Board of Bar Overseers") issued an "Order of Public Reprimand" against Mr. Greenspan as a result of a joint "stipulation of facts and disciplinary violations." According to the stipulation, Mr. Greenspan represented a client who had been involved in three automobile accidents occurring on March 24, 1993, September 23, 1993, and June 4, 1994. He resolved the March 24, 1993 accident to the satisfaction of the client. Regarding the accident that occurred on September 23, 1993, Mr. Greenspan filed a lawsuit on September 20, 1996, prior to the expiration of the statute of limitations, but failed to take any other action to advance the case. Consequently, the case was dismissed on August 4, 1998, and Mr. Greenspan made no effort to reinstate the case.[1] Mr. Greenspan filed a claim with the insurance company of the driver involved in the June 4, 1994 accident. He subsequently rejected an $8,000.00 offer from the insurance company on behalf of his client, but failed to file a lawsuit relating to this accident prior to the expiration of the statute of limitations. The client retained new counsel who contacted Mr. Greenspan on December 8, 1997 and January 13, 1998, requesting the client's files in these matters. Mr. Greenspan did not respond.

After Mr. Greenspan's failure to respond to new counsel, the client filed a complaint with the Massachusetts Bar Counsel. Subsequently, Mr. Greenspan was charged with failing: (1) to safeguard a copy of the complainant's contingent fee agreement, in violation of Massachusetts Disciplinary Rule ("Mass. DR") 2–106;[2] (2) to prosecute an action for the September 23, 1993

---

1. The client retained other counsel who took the appropriate steps to have the case reinstated.

2. The "[n]ew Massachusetts Rules of Professional Conduct became effective on January 1, 1998, replacing the Canon of Ethics and

the Disciplinary Rules." *In re Kerlinsky,* 428 Mass. 656, 704 N.E.2d 503, 504 n. 1 (1999). Under former Mass. DR 2–106, lawyers are not permitted to "enter into an arrangement for, charge, or collect a contingent fee, expect as permitted by Supreme Judicial Court Rule 3:05." The applicable version of Massachu-

accident and causing it to be dismissed and failing to file suit for the June 4, 1994 accident within the three-year statute of limitations, in violation of Mass. DR 6–101(A)(3)[3] and Mass. DR 7–101(A)(1)–(3);[4] (3) to comply with the client's request that the case be forwarded to new counsel, in violation of Mass. DR 2–110(A)(4) and Rule 1.16(d) of Massachusetts Rules of Professional Conduct;[5] and (4) to cooperate with the Massachusetts Bar Counsel, in violation of Rules 4:01, § 3(1)(b) and 8.4(g) of the Massachusetts Rules of Professional Conduct.[6] The Massachusetts Bar Counsel had difficulty getting Mr. Greenspan to respond, even to a subpoena. Eventually, Mr. Greenspan retained counsel and stipulated to his violations of the Massachusetts Rules on Professional Conduct. He also waived his right to a public hearing and agreed to dispose of the matter by imposition of a public reprimand. On February 14, 2000, the Board of Bar Overseers accepted the joint recommendation for a public reprimand based on Mr. Greenspan's and the Massachusetts Bar Counsel's stipulation of facts and disciplinary violations. On April 20, 2000, the Board of Bar Overseers entered an order publicly reprimanding Mr. Greenspan.

setts Rule 3:05, which was in effect until January 1, 1998, required attorneys to retain a duplicate copy of the contingency fee agreement for not less than "three years after the completion or settlement of the litigation or the termination of the services, whichever first occurs." Mass. Sup. Jud. Ct. R. 3:05, § 4. Rule 3:07 of Massachusetts Supreme Judicial Court (Mass. Sup. Jud. Ct.), which included Rule 1.5(a) superceded Rule 3:05 governing contingent fee agreements, and DR 2–106. *Erb v. Wainright*, No. 99–6275, 2003 Mass.Super. Lexis 157,* at 31 (Mass.Super. June 24, 2003).

3. Under former Mass. DR 6–101(A)(3), "[a] lawyer shall not [n]eglect a legal matter entrusted to him." *See In re Kerlinsky, supra*, note 1, 704 N.E.2d at 504 n. 1.

4. Under pertinent portions of former Mass. DR 7–101(A)(1)–(3), "[a] lawyer shall not intentionally: (1) [f]ail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules ... (2) [f]ail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under [various provisions in the disciplinary rules not cited in the underlying disciplinary action]; (3) [p]rejudice or damage his clients during the course of the professional relationship...." *See In re Anderson*, 416 Mass. 521, 624 N.E.2d 538, 540 n. 6 (1993).

5. Mass. Sup. Jud. Ct. Rule 3:07, Rule of Professional Conduct 1.16(e) (formerly Mass. DR 2–110(A)(4)) requires attorneys to provide a former client with his or her file, "within a reasonable time following the client's request" including "(1) all paper, documents, and other materials the client supplied the lawyer....; (2) all pleadings and others papers filed with the court or served by or upon any party....; (3) all investigatory or discovery documents for which the client has paid the lawyer's out-of-pockets costs ...."; and (4) copies of the attorney's work product for work performed pursuant to a contingent fee agreement. When the representation is terminated, Massachusetts Rule of Professional Conduct Rule 1.16(d) requires lawyers to "takes steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that has not been earned."

6. Under Mass. Rule 4:01, § 3(1)(b), a lawyer who, without good cause, fails to respond to requests for information by Massachusetts Bar Counsel or the Board of Overseers made in the course of processing a disciplinary petition is subject to disciplinary charges. Under Rule 8.4(g) of Mass. Rules of Professional Conduct, "[i]t is professional misconduct for a lawyer to: ... fail without good cause to cooperate with Bar Counsel or the Board of Bar Overseers as provided in Supreme Judicial Court Rule 4:01, § 3."

On December 3, 2002, Bar Counsel filed with this court a certified copy of the order of the Board of Bar Overseers. On December 19, 2002, this court issued an order directing Bar Counsel to inform the Board of her position concerning reciprocal discipline; and directing Mr. Greenspan thereafter to show cause before the Board why identical, greater, or lesser reciprocal discipline should not be imposed. Mr. Greenspan did not respond to the December 19th order of this court. However, earlier, he had sent an undated letter, which Bar Counsel received on April 17, 2002, confirming his intention not to contest the issues that resulted in the Board of Bar Overseers' public reprimand. Mr. Greenspan also stated that he wished to resolve this matter in a way "which does not result in additional hearings if possible."

On January 16, 2003, Bar Counsel informed the Board of her position pertaining to reciprocal discipline, and on July 30, 2004, the Board issued its Report and Recommendation. A majority of the Board recommended that "non-identical reciprocal discipline of a 30–day suspension" be imposed on Mr. Greenspan. Three members of the Board dissented, taking the position that the reciprocal proceeding should have been dismissed, with Bar Counsel having the option of deciding whether or not to bring an original proceeding.

*Respondent Leslie Silverman*

Ms. Silverman was admitted to the District of Columbia Bar on October 2, 1995, and previously had been admitted to practice in Maryland. Her case consists of two consolidated matters—an original jurisdiction proceeding arising from her failure to respond to the District's Bar Counsel, and a reciprocal proceeding arising out of a reprimand issued by the Maryland Attorney Grievance Commission ("Attorney Grievance Commission.").

In the original proceeding, Bar Counsel filed a Specification of Charges and a Petition Instituting Formal Disciplinary Proceedings on July 14, 2003, alleging that Ms. Silverman violated the following Rules of Professional Conduct: Rule 8.1(b) [7]— failure "to respond reasonably to a lawful demand for information from a disciplinary authority"; [8] Rule 8.4(d) [9]—"engag[ing in] and continu[ing] to engage in conduct that seriously interfered with the administration of justice"; and D.C. Bar R. XI, § 2(b)(3) [10]—failure "to comply with an[ ] order of the [c]ourt or the Board." In a letter dated August 11, 2003, Ms. Silverman acknowledged that she received Bar Counsel's request for information and failed to respond in a timely manner. She also explained that after receiving Bar Counsel's first request, she contacted her former law firm to retrieve the file related to the underlying complaint.

7. Under Rule 8.1(b), a lawyer in connection in connection with a disciplinary matter must not "[f]ail to disclose a fact necessary to correct a misapprehension known by the lawyer or applicant to have arisen in the matter, or knowingly fail to respond reasonably to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

8. The underlying disciplinary matter involved Ms. Silverman's representation of a client in a chapter 13 bankruptcy petition.

9. Rule 8.4(d) provides that "[i]t is professional misconduct for a lawyer to: ... [e]ngage in conduct that seriously interferes with the administration of justice."

10. D.C. Bar Rule XI, § 2(b)(3) provides that failing to comply with any order of the Court or the Board pursuant to the District of Columbia Bar Rules is grounds for discipline.

On September 10, 2003, Hearing Committee Number 10 held a hearing on the charges lodged against Ms. Silverman. She was called as Bar Counsel's witness. She testified but did not provide any exhibits or call any witnesses in her defense, and was not represented by counsel. After the hearing, the Committee requested post-hearing briefs according to the briefing schedule prescribed by Board Rule 12.1. Ms. Silverman failed to file her post-hearing brief in a timely manner, but filed proposed findings and conclusions on November 4, 2003, without submitting a request to file out of time. Therefore, the Committee did not consider her submission. On November 17, 2003, the Committee found that Ms. Silverman violated D.C. Bar R. XI, § 2(b)(3), and Rules 8.1(b) and 8.4(d) of the Rules of Professional Conduct.

In the Attorney Grievance Commission case, Ms. Silverman failed to respond to three separate requests for information concerning ethical complaints. Ultimately, Ms. Silverman and Maryland Bar Counsel agreed that her failure to respond to the complaints violated Rule 8.1(b) [11] of the Maryland Rules of Professional Conduct and filed a joint petition for public reprimand with the Attorney Grievance Commission. Ms. Silverman also entered into a Consolidated Diversion Agreement (CDA) pursuant to Maryland Rule 16–763. By letter dated December 22, 2003, the Attorney Grievance Commission directed the Maryland Bar Counsel to issue a reprimand. Ms. Silverman did not advise the District's Bar Counsel of her Maryland discipline, but Bar Counsel received a letter, dated January 13, 2004, from the Maryland Assistant Bar Counsel advising her of the reprimand.

After Bar Counsel informed this court of Ms. Silverman's discipline, we issued an order on February 19, 2004, directing the Board to recommend whether identical, greater, or lesser reciprocal discipline should be imposed, or whether the Board elects to proceed *de novo.* The Board opted for reciprocal discipline, and Ms. Silverman was ordered to show cause before the Board why identical, greater, or lesser discipline should not be imposed.

On April 20, 2004, Bar Counsel urged the Board to recommend a thirty-day suspension rather than a public reprimand in the reciprocal discipline case, and indicated that she was not opposed to a stay with conditions. On December 17, 2004, the Board issued its Report and Recommendation. A majority of the Board recommended a sanction of public censure in the original proceeding; and in the reciprocal matter concluded that the Maryland Grievance Commission's "orders cannot be the basis for reciprocal discipline under D.C. Bar R. XI, § 11." Thus, the Board "order[ed] that the reciprocal matter, No. 045–04, be dismissed." Two members of the Board concurred with the recommended discipline in the original proceeding, but dissented with respect to the reciprocal matter, disagreeing with the majority's analysis of "disciplining court" as that phrase is used in D.C. Bar R. XI, § 11.

## ANALYSIS

The issue we confront in the reciprocal discipline cases is whether discipline has

---

11. Rule 8.1(b) of the Maryland Rules of Professional Conduct provides in part that a lawyer "in connection with a disciplinary matter[] shall not ... fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

been ordered in the foreign jurisdiction by an entity identified in D.C. Bar R. XI, § 11, as a "disciplining court." Section 11(a) defines "disciplining court" as follows:

[(1)] any court of the United States as defined in Title 28, Section 451 of the United States Code, [(2)] the highest court of any state, territory, or possession of the United States, and [(3)] any other agency or tribunal with authority to disbar or suspend an attorney from the practice of law in any state, territory, or possession of the United States.

D.C. Bar R. XI, § 11(a). Moreover, Rule XI, §§ 11(b), (c), (d), (e), and (h) all use the phrase "by a disciplining court outside the District of Columbia or by another court in the District of Columbia."

### Summary of Board (Majority and Minority) and Bar Counsel Views

At oral argument, the Board asked this court to "adopt an expansive and dynamic approach" to interpreting the definition of disciplining court, mainly because disciplinary systems are "evolving around the country" and are delegating to their judicially created boards and committees the power to reprimand and otherwise sanction attorneys. The Board took the position that "highest court" as used in Rule XI, § 11(a), means "highest court of a state exercising its disciplinary authority in whatever fashion the jurisdiction chooses," including disciplining bodies which have been delegated authority to discipline attorneys. The Board argued that the third category in Rule XI, § 11(a)—"any other agency or tribunal with authority to disbar or suspend"—was not entirely clear and could be interpreted as an "agency or

tribunal *of the highest court*" or a separate agency or tribunal.

As reflected in Mr. Greenspan's case and that of Ms. Silverman (as well as another case which will be mentioned later in this opinion), the Board is not unanimous concerning the interpretation of Rule XI, § 11(a), nor how the majority's test regarding the term "disciplining court" should be applied. In its report pertaining to Mr. Greenspan's case, the Board majority developed a three-part test to determine whether an administrative body is a "disciplining court": "1) the administrative body imposing discipline is a part of an attorney disciplinary system; 2) the administrative body is exercising disciplinary authority pursuant to rules or regulations by a court which itself has the authority to disbar or suspend attorneys in the jurisdiction; and 3) the administrative body's imposition of discipline is consistent with that delegated authority." The Board majority [12] concluded that the Board of Bar Overseers is a "disciplining court" under this test because its authority to administer the system of attorney discipline remains under the jurisdiction and control of the Massachusetts Supreme Judicial Court, which has chosen to streamline its disciplinary system by delegating authority in attorney disciplinary matters to the Board of Bar Overseers. If the Board of Bar Overseers decides that a proceeding should be terminated by imposition of a suspension or disbarment, it must file an Information with the Massachusetts Supreme Judicial Court, which reviews the recommendation and determines whether to sustain or reject it. The Board majority contended that discipline by the Board of Bar Overseers has the same force and effect as if the discipline had been imposed by the

---

12. The majority report was signed by Timothy J. Bloomfield, Esq., and "prepared" by Maria Holleran Rivera, Esq.

Massachusetts Supreme Judicial Court. The majority also declared that the third category of Rule XI, § 11(a) "does not preclude a finding that the disciplinary actions of judicially created entities should be given effect as reciprocal discipline in this jurisdiction."

Three members of the Board dissented [13] in the Greenspan case, contending that "[n]o provision of D.C. Bar R. XI allows [the Board] to impose discipline in a reciprocal discipline proceeding if the foreign discipline [w]as issued from a body that is *not* a 'disciplining court.' " (Emphasis in original.) The Board of Bar Overseers does not fit into any of the categories of the definition—it is not itself the highest court of Massachusetts and is not an agency or tribunal with the authority to disbar or suspend. The dissenters determined that reading the "highest court of any state" to include "a 'creature[ ] of the Court' " was too broad.[14] They maintained that "an entity is a 'disciplining court' only if it falls within the language of

D.C. Bar R. XI, § 11(a): it must either be a *court,* or, if it is some other kind of tribunal or entity, it must *itself* have authority to suspend or disbar." (emphasis in original).

In its brief in the Greenspan case, Bar Counsel agreed with the Board majority's *Greenspan* test and with the Board's determination that the Board of Bar Overseers should be considered a "disciplining court" pursuant to Rule XI, § 11(a). Bar Counsel appeared willing to base that conclusion on either the second or third prong of § 11(a), but seemed to prefer the third prong.

In its report for Ms. Silverman's case, the majority of the Board [15] asserted that the *Greenspan* test "was not adopted as a comprehensive statement of the methodology for determining whether 'disciplinary court' status should be accorded a foreign administrative body" which exercises its authority from the highest court but which does not have the authority to disbar or suspend.[16] The Board majority contended

13. The minority report was written by Paul R.Q. Wolfson, Esq.

14. The dissenting Board members (Martin R. Baach, Esq. wrote the separate opinion for the dissenters) noted that other jurisdictions have agencies or tribunals that have the authority to disbar or suspend. The dissenters maintained that: "It is the third prong of the definition [of disciplining court]—not the second—that seems intended to reach ... such bodies ... as the Virginia State Bar Disciplinary Board, which are not the 'highest court of any state' but which do have authority to suspend or disbar under rules issued by the state supreme court."

15. The majority report was authored by Paul R.Q. Wolfson, who wrote the dissenting report in Mr. Greenspan's case.

16. In its report, the Board majority stated:
Some statements in the *Greenspan* report might suggest that the orders of any agency that satisfy the foregoing three-part test are to be deemed, without more, orders of "dis-

ciplining court" under D.C. Bar XI, § 11, but several aspects of the report caution against any such broad reading of the Board's report. First, the Board in *Greenspan* identifies the test as "a prerequisite for imposing discipline whenever a lower administrative body imposes discipline in a foreign jurisdiction." [*In re Greenspan*, Bar Docket No. 279–01 at 26 (July 30, 2004)] (emphasis added). That statement implies that other tests maybe necessary even for bodies that satisfy the *Greenspan* test. Second, the Board's adoption of the test comes in the report after the Board has stated and fully explained its decision regarding orders of the Massachusetts Board of Bar Overseers, the only administrative body at issue in *Greenspan*. And although the report goes on to "determine" that the Massachusetts Board satisfies all three prongs of the test (*Id.* at 27), the Board adopts the test for its usefulness "to *develop* a consistent methodology for determining what constitutes a 'disciplinary court.' " *Id.* at 26 (emphasis added). The Board thus did not hold out

that disciplining court status instead "should be accorded only to administrative bodies, like the Massachusetts Board of Bar Overseers, that satisfy the prerequisite three prongs of the *Greenspan* test, but also have the powers, duties and regular functions to justify the presumption its orders would have under D.C. Bar R. XI, § 11(c)." [17] The Maryland Attorney Grievance Commission, the Board majority stated, is different because it "functions more like a prosecutor's office or a grand jury" since the Commission "supervises the prosecutorial activities of Maryland Bar Counsel" and if the Commission petitions the Maryland Court of Appeals "for disciplinary or remedial action, the Commission ceases to operate like an adjudicator" and "stands as the petitioner in such cases, with the actual prosecution usually conducted by Bar Counsel." Therefore, the Board majority took the position that the

Maryland Attorney Grievance Commission's orders cannot be the basis for reciprocal discipline. As the Board majority said: "The Board's decision in *Greenspan* was not intended to reach orders issued by prosecutors, rather than adjudicators, in the disciplinary system." It should be noted that in its analysis, the Board majority recognizes that there may be entities which are akin neither to the Maryland Attorney Grievance Commission, nor to the Massachusetts Board of Overseers:

> Of course, given the very diverse array of disciplinary systems in this country, the Board may well encounter bodies in the future that fall somewhere in between the Massachusetts Board of Overseers and the Maryland Grievance Commission. The Maryland Grievance Commission, however, falls at one pole and its orders cannot be the basis for

its adoption of the test as establishing a consistent methodology or explicitly conclude that any administrative body that satisfies the test should be deemed equivalent to a "disciplinary court" under D.C. Bar R. XI, § 11. In fact, the report itself implicitly disclaims any such intention when it denies that a foreign administrative body similar to *District of Columbia Office of Bar Counsel*—an authority that would indisputably satisfy all three parts of the test—could issue orders on which reciprocal discipline could be based. That disclaimer appears at *Greenspan* at 11 n. 14, in which the Board majority responds to an argument made in the dissenting statement. The Greenspan dissenters, on the assumption that any agency that satisfies the Board's "three-part test" would be deemed a "disciplinary court" for D.C. Bar R. XI, § 11, contended that "informal admonitions" of the kind Bar Counsel issues under authority delegated by the Court might be held adequate for imposing reciprocal discipline if issued by a similar agency in another jurisdiction. *Greenspan*, Dissenting Statement of Member Paul R.Q. Wolfson at 3–5. The Board majority rejected this possibility, however, by observing that "this jurisdiction has never imposed reciprocal discipline based on a

Bar Counsel admonition issued in another jurisdiction" and explaining that "we are not endorsing such a practice." *Greenspan* at 11 n. 14 (emphasis added).

17. Section 11(c) states:

> Reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence, that:
> (1) the procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;
> (2) there was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject;
> (3) the imposition of the same discipline by the Court would result in grave injustice;
> (4) the misconduct established warrants substantially different discipline in the District of Columbia; or
> (5) the misconduct elsewhere does not constitute misconduct in the District of Columbia.
> D.C. Bar R. XI, § 11(c).

reciprocal discipline under D.C. Bar R. XI, § 11. Accordingly, the Board orders that the reciprocal matter, No. 045–04, be dismissed.

(footnote omitted).

Bar Counsel disagreed with the majority of the Board and maintained that the Attorney Grievance Commission should be considered a disciplining court. At oral argument, Bar Counsel expressed concern about its case load, and stated that since another jurisdiction has delegated some authority to its board to reprimand, Bar Counsel should not have to spend its resources to bring an original action against the attorney.

In its dissent from the Board majority's Report and Recommendation regarding the interpretation of "disciplining court," the Board minority emphasized that under the *Greenspan* test, the Maryland Attorney Grievance Commission is a "disciplining court" and thus reciprocal discipline should have been imposed because had Ms. Silverman "contested either the liability or sanction," the charges would have been heard by a circuit court and "finally adjudicated before the Maryland Court of Appeals," the decisions of which would have been given deference in this jurisdiction. Thus, the minority declared, the Board majority's decision not to impose recipro-cal discipline "creates a conundrum: because [Ms. Silverman] was adjudicated by consent rather than in a contested proceeding, Bar Counsel must now commit the resources necessary to bring an original matter against her or [she] will not be subject to any sanction in the District of Columbia," which is not the intent of Rule XI. The Board minority argued that (1) "the Board is bound as a matter of *stare decisis* to follow the three-part test ... announced in [*Greenspan*]"; (2) the *Greenspan* decision is the right result under statutory construction when one applies common sense; (3) the Maryland Attorney Grievance Commission operates like our Board and has the same functions as our Board and operates the same, except for the processing a petition for disciplinary action, which in both jurisdictions protects an attorney's right to due process; therefore the majority's "fundamental concern, that inclusion of the Maryland Commission (but not the Massachusetts Board in *Greenspan*) within the ambit of Rule XI would violate due process ... is misplaced"; and (4) since "reciprocal cases are consuming more and more resources in our disciplinary system, ... [t]he Board should ... find solutions that, while fully compliant with the demands of due process, are expeditious and not overly burdensome." [18]

---

**18.** In another case, *In re Suzann L. Beckett,* Bar Docket No. 174–02 (Dec. 17, 2004), the Board addressed the issue of "disciplining court." In *Beckett,* the Reviewing Committee of the Connecticut Statewide Grievance Committee ("Reviewing Committee") publicly reprimanded Ms. Beckett for violating the Connecticut Rules of Professional Conduct. The Reviewing Committee is a subcommittee of Connecticut's Grievance Committee, which was created by the Connecticut Supreme Court and whose members are appointed by the Connecticut Superior Court. Both courts have the authority to suspend or disbar an attorney. Neither the Reviewing Committee nor the Statewide Grievance Committee have the authority to disbar or suspend an attorney. Nevertheless, the Board's majority order (written by Martin R. Baach for all members except five who concurred in a separate statement) recognized that "decisions of the Connecticut Statewide Grievance Committee and its Reviewing Committee are reviewable by the Connecticut Superior Court, which itself has the power and authority to suspend or disbar attorneys." Therefore, the Board "majority" opinion "agree[d] with Bar Counsel that the Connecticut Reviewing Committee is a 'disciplining court' pursuant to the terms of Rule XI."

The five members of the Board who concurred (the separate concurring statement

### Applicable Legal Principles

■ Typically, we are obligated to "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and [to] adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(g)(1) (2005); *In re Bailey*, 883 A.2d 106, 115 (D.C.2005) (internal quotation marks omitted). However, " 'in the final analysis, the responsibility to discipline lawyers is the court's.' " *In re Sims*, 844 A.2d 353, 360 (D.C.2004) (quoting *In re Edwards*, 808 A.2d 476, 482 (D.C.2002)).

■ Generally, our review in uncontested disciplinary cases is limited and the presumption is in favor of identical reciprocal discipline, unless the respondent demonstrates, or the court finds on the face of the record, by clear or convincing evidence, that one or more of the five exceptions set forth in D.C. Bar R. XI, § 11(c) applies.[19] However, in these consolidated cases, we are faced with an issue of first impression: whether the Attorney Grievance Commission (Maryland) and the Board of Bar Overseers (Massachusetts) are "disciplining courts" within the meaning of Rule XI, § 11(a). We review issues of statutory and regulatory construction and legal issues of first impression *de novo*. *In re Estate of Green*, 816 A.2d 14, 16 (D.C.2003); *In re Marshall*, 762 A.2d 530, 536 (D.C.2000).

■ " 'The primary and general rule of statutory construction is that the intent of the lawmaker [or drafter] is to be found in the language that he has used.' " *Varela v. Hi–Lo Powered Stirrups*, 424 A.2d 61, 64–65 (D.C.1980) (en banc) (quoting *United States v. Goldenberg*, 168 U.S. 95, 102–03, 18 S.Ct. 3, 42 L.Ed. 394 (1897)). " 'In interpreting a statute [or rule], we are mindful of the maxim that we must look first to its language; if the words are clear and unambiguous, we must give effect to its plain meaning.' " *McPherson v. United States*, 692 A.2d 1342, 1344 (D.C. 1997) (quoting *J. Parreco & Son v. Rental Hous. Comm'n*, 567 A.2d 43, 45 (D.C.1989) (citing *Office of People's Counsel v. Public Serv. Comm'n*, 477 A.2d 1079, 1083 (D.C. 1984))); *see also District of Columbia v. Place*, 892 A.2d 1108, 1111 (D.C.2006) ("It is axiomatic that the words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them.") (citations and internal quotations omitted). "Like the rule for statutory construction, 'words of a [rule] should be construed according to their ordinary sense and with the meaning commonly attributed to them.' " *Washington v. United States*, 884 A.2d 1080, 1096 (D.C.2005) (alteration in original) (quoting *Thompson v. District of Columbia*, 863 A.2d 814, 817–18 (D.C.2004) (citation and internal quotations omitted)).

was authored by Mr. Wolfson who wrote the majority Board opinion in the Silverman case, but authored the dissent in the Greenspan case), expressed concern "about the potentially broad reach of the Board's three-part test in *Greenspan*, which ... could conceivably encompass prosecutorial bodies such as the Office of Bar Counsel." But, because the Board was willing to limit the reach of the *Greenspan* test in *Silverman*, the concurring members agreed that the *Greenspan* test should be given "precedential effect for bodies that are functionally similar to the Massachusetts Board of Bar Overseers." The five members of the Board deemed themselves constrained by the majority decisions in *Greenspan* and another case, *In re Dixon*, Bar Docket Nos. 480–95 and 178–96 (July 22, 1996), which determined that the Connecticut Reviewing Committee is a "disciplining court" pursuant to Rule XI, § 11(a).

**19.** See note 19, *supra*.

"[C]ourts are bound to give effect to the literal meaning [of a statute or rule] without consulting other indicia of intent or meaning when the meaning of the statutory [or regulatory] text itself is 'plain' or 'clear and unambiguous,'" *McPherson v. United States*, 692 A.2d 1342, 1345 (D.C. 1997) (other internal quotation marks omitted) (quoting 2A Sutherland, Statutes and Statutory Construction § 46.04, at 98 (5th ed. 1992)), particularly where the language is *very* clear. *See In re M.M.D.*, 662 A.2d 837, 855 (D.C.1995) ("[T]he less plain the statutory [or regulatory] language is, the more likely the focus on legislative intent or statutory purpose will be determinative; and the less clear the answer is to the historical inquiry about how the legislature [or drafters] would have answered the unconsidered question, the more likely an analysis based on general statutory [or regulatory] purpose will be conclusive.") (citation omitted).

### *Application of Legal Principles*

■ We turn to an application of these statutory (and regulatory) interpretive principles. In order to impose reciprocal discipline under D.C. Bar Rule XI, § 11, there must be a determination of professional misconduct by the "disciplining court" of a foreign jurisdiction, or by another court in the District of Columbia. *See* D.C. Bar R. XI, §§ 11(a), (b), (c), and (d), (e) and (h). The drafters of the Rule XI, § 11(a) (this court),[20] identified three types of disciplining courts whose discipline the District of Columbia will reciprocate: (1) "any court of the United States as defined in Title 28, Section 451 of the United States Code"; (2) "the highest court of any state, territory, or possession of the United States"; and (3) "any other

agency or tribunal with authority to disbar or suspend an attorney from the practice of law in any state, territory, or possession of the United States." Examining the types of courts listed above and relying on the clear and unambiguous words of Rule XI, § 11(a), it is apparent that this court limited the imposition of reciprocal discipline to cases where foreign courts, tribunals or agencies have actual authority to disbar or suspend an attorney.

■ The parties do not raise any question concerning the interpretation of the first prong of Rule XI, § 11(a): "any court of the United States as defined in Title 28, Section 451 of the United States Code." Under 28 U.S.C. § 451, the term "court of the United States" "includes the Supreme Court of the United States, courts of appeals, district courts ... [28 USCS §§ 81 et seq.], including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior." Such courts have the authority to disbar and suspend attorneys from practice before their respective jurisdictions. *In re Snyder*, 472 U.S. 634, 645, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985) ("Federal courts admit and suspend attorneys as an exercise of their inherent power; the standards imposed are a matter of federal law."); *see also In re Lyles*, 714 A.2d 120 (D.C.1998) (per curiam) (identical reciprocal discipline of disbarment imposed where attorney was disbarred by the United States District Court for the District of Maryland for misconduct arising from bankruptcy matters.); *In re Bielec*, 755 A.2d 1018, 1022 (D.C.2000) (per curiam) ("We acknowledge that the bankruptcy court is a disciplining

**20.** *See* D.C. Bar Preamble ("The District of Columbia Court of Appeals ... promulgates the following Rules for the government of the Bar and individual members thereof."); *see* generally D.C. Bar R. VII, § 3; *On Petition to Amend Rule 1 of Rules Governing Bar*, 431 A.2d 521, 522–24 (D.C.1981).

court within the meaning of Rule XI, § 11(a), as judges of that tribunal have the authority to suspend or disallow attorneys from appearing before it.").

The diverse views relating to the interpretation of § 11(a) center on the second and third prongs of that section. The Board majority apparently looked primarily to the second prong of § 11(a)—"the highest court of any state, territory, or possession of the United States," contending in its report on the Greenspan matter that it is a proper "[i]nterpret[ation of] the term 'disciplining court' to include the discipline imposed by the lower-level disciplining arm of the highest state court, or a court with ultimate attorney discipline authority ...." The Greenspan dissenters, however, argued that: "The Board of Bar Overseers may well exercise authority *delegated* by the highest court of Massachusetts, and the delegated authority that the Board exercises may well be adjudicative (or quasi-judicial), but the Board is not *itself* the highest court of Massachusetts. And the Board of Bar Overseers also is not an 'agency or tribunal with authority to disbar or suspend an attorney' from the practice of law in Massachusetts." In the Silverman case, the Board majority declared that the Attorney Grievance Commission was not a "disciplining court" under Rule XI, § 11(a), while those who dissented regarding this conclusion invoked "common sense" to contend that under the second prong of § 11(a), the Attorney Grievance Commission is a "disciplining court": "Common sense suggests that [this court] fully intended that authorized delegates of a state's highest court charged with conducting disciplinary proceedings for that court and subject to the court's supervision and review should be considered as part of that court for purposes of the 'disciplining court' definition."

Bar Counsel in its brief emphasized the Board majority's secondary conclusion in the Greenspan case regarding the interpretation of Rule XI, § 11(a)'s third prong—"any other agency or tribunal with authority to disbar or suspend an attorney from the practice of law in any state, territory, or possession of the United States." As the Board majority stated:

[A] fair reading of § 11(a) is that the qualifier following the third category is intended to include as a "disciplining court" only those non-judicial entities that are authorized to impose disbarment or suspension on attorneys practicing before them. That interpretation, while consistent with the meaning of D.C. Bar XI, § 11(a), does not preclude a finding that the disciplinary actions of judicially created entities should be given effect as reciprocal discipline in this jurisdiction.

Bar Counsel then generally agreed with the Board majority, adding:

Unlike the minority, Bar Counsel submits that the third prong of the "disciplining court" definition ... is really meant to disqualify from the definition those agencies or tribunals of the federal government and the states which may have authority to disbar or suspend an attorney from practice *before that agency or tribunal,* but do not have authority to disbar or suspend an attorney from the practice of law in any state, territory, or possession of the United States. Conversely, the third prong *would* include such entities as the Virginia State Bar Disciplinary Board ... which, although a creation of the Virginia Supreme Court, itself has authority to suspend or revoke (*i.e.,* disbar) an attorney from the practice of law in the Commonwealth of Virginia. Thus, it is not impossible that a judicially-created disciplining body might have authority as a disciplining court under more than one prong of the definition.

Consequently, Bar Counsel believes that the term reciprocal discipline by a "disciplining court" should "include the discipline imposed by the lower-level disciplining arm of the highest state court, or a court with ultimate disciplinary authority." These diverse views within the Board, added to Bar Counsel's views, portend difficulty achieving consensus on whether a particular lower level state body fits the definition of a disciplining court. As the Board acknowledged in its report on the Silverman case, there are other lower level bodies in state disciplinary systems that resemble neither the Board of Bar Overseers nor the Attorney Grievance Commission.

Based upon our review of these cases, the varying positions of the Board majority and minority and the views of Bar Counsel, and the principles of statutory and regulatory interpretation, we conclude that the words of Rule XI, § 11(a) cannot and should not be interpreted broadly and expansively as advocated by the Board majority in the Greenspan case. Moreover, neither the drafting history of § 11(a), nor our past decisions afford support for the Board majority's interpretation of the rule.

### The Second and Third Prongs of Rule XI, § 11(a)

█ The second prong of Rule XI, § 11(a) identifies "the highest court of any state, territory, or possession of the United States" as a "disciplining court." These highest courts of states have the power to disbar or suspend an attorney from the practice of law.[21] The words used in the second prong are "clear and unambiguous," *McPherson, supra,* 692 A.2d at 1344. Therefore, "we must give effect to [their] plain meaning." *Id.* Given the "ordinary sense" of these words and "the meaning commonly attributed to them," *Place, supra,* 892 A.2d at 1111, "highest court" does not mean a lower level entity to which authority has been delegated by the highest court. Had the drafters of the second prong intended "highest court" to include such entities, they easily could have said "the highest court of any state, or any lower level body to which the highest court has delegated authority to disbar or suspend an attorney," but they did not. Thus, while the Board of Bar Overseers and the Attorney Grievance Commission have been delegated authority by their respective jurisdictions to recommend suspension or disbarment, they are not the highest court of a state, nor can they actually disbar or suspend an attorney from practicing law in their respective jurisdictions. *See* Mass. Sup. Jud. Ct. R. 4:01, § 5(3); Md. R. 16–721.

█ Similarly, the words of the third prong of Rule XI, § 11(a) are clear and unambiguous: "any other agency or tribu-

---

**21.** A lawyer "admitted to, or engaging in, the practice of law in [Massachusetts] shall be subject to [the Supreme Judicial Court]'s exclusive disciplinary jurisdiction" and "[d]iscipline of lawyers may be ... by disbarment, resignation pursuant to section 15 of this rule, or suspension by [the Supreme Judicial Court of Massachusetts]." Mass. Sup. Jud. Ct. R. 4:01, §§ 1(1), 4. In Maryland, an attorney may be disbarred or suspended solely by the Maryland Court of Appeals for professional misconduct. Md. R. 16–721. In Connecticut, an attorney may be suspended or disbarred by the Superior Court of Connecticut. Conn. Gen.Stat. § 51–84 (2003); *Burton v. Mottolese,* 267 Conn. 1, 835 A.2d 998, 1017 (2003) (The Supreme Court noted "that the [Connecticut] Superior Court possesses inherent authority to regulate attorney conduct and to discipline the members of the bar. Thus, the judiciary has the power to admit attorneys to practice and to disbar them ... to fix the qualifications of those to be admitted ... and to define what constitutes the practice of law.") (citations and internal quotation marks omitted); *see also* Conn. Practice Book §§ 2–40(b), (c), 2–41, 2–42, 2–44, 2–45, 2–47.

nal with authority to disbar or suspend an attorney from the practice of law in any state, territory, or possession of the United States." This third prong generally has been limited to agencies or tribunals with powers identical to those in the second prong, that is, the power or authority to disbar or suspend an attorney from the practice of law in the jurisdiction. Our past cases reveal that we have been fairly careful to limit this third prong to bodies that may disbar or suspend an attorney from practice in the jurisdiction. In *In re Soininen*, 853 A.2d 712, 729 (D.C.2004), we determined that the United States Immigration Court, which could only suspend or disbar an attorney from practicing before immigration tribunals, was not a "disciplining court" which could suspend or disbar an attorney from practicing before "any state, territory, or possession of the United States," nor was it a federal court under 28 U.S.C. § 451. *In re Webster*, 661 A.2d 144, 148 (D.C.1995), was an unusual case involving whether foreign islands could be deemed a "territory." We focused on the "nexus between the judiciary of the United States and that of Palau [formerly the Palau Islands, in the West Pacific], the fact that the justices of the Palauan High Court are appointed by the Secretary of Interior of the United States, and the language provided in Palau's Rules of Admission" to find "no valid reason for not treating" Palau as a territory under Rule XI, § 11(a). Although the majority in *In re Shelnutt*, 694 A.2d 89 (D.C.1997) disposed of a reciprocal matter on non-ripeness grounds, the dissent stated:

> Bar Counsel concedes ... that the Fifth District Committee of the Virginia State

Bar, which issued the reprimand, has no authority to disbar an attorney or to suspend an attorney from practice. Accordingly, it is not a "disciplining court" within the meaning of D.C. Bar R. XI, § 11(a), and this court is without authority to impose reciprocal discipline.

*Id.* at 90 (Schwelb, J. dissenting). The Board in its Greenspan report identified other cases involving a District Subcommittee of the Virginia State Bar where we imposed reciprocal discipline, but acknowledges that in some of those cases neither the respondent nor Bar Counsel took exception to the Board's recommendation. *See In re Bland*, 749 A.2d 750 (D.C.2000) (per curiam); *In re Steinberg*, 720 A.2d 900, 901 (D.C.1998) (per curiam); *In re McGann*, 666 A.2d 489 (D.C.1995) (per curiam). In the *Drury* cases, also cited by the Board in its Greenspan report, no question was raised concerning a "disciplining court" as used in section 11(a), nor did we address the matter, and we were focused on other issues, *In re Drury*, 683 A.2d 465 (D.C.1996) (*Drury II*); *In re Drury*, 638 A.2d 60 (D.C.1994) (per curiam) (*Drury I*).

 The Board urges on us at least its position that, pursuant to Mass. Sup. Jud. Ct. Rule 4:01, § 4, the Board of Bar Overseers is delegated the sole power to issue public reprimands and to do so as an arm of the highest court (unlike the Attorney Grievance Commission, where either the Commission or the highest court may issue public reprimands, pursuant to Md. Rule 16–721(a)(3)).[22] The Board maintains that Massachusetts' highest court has chosen to streamline its disciplinary system by delegating authority in attorney disci-

---

22. In Maryland, public reprimands by the Attorney Grievance Commission must be filed with the Clerk of the Court of Appeals of Maryland. Md. Rule 16–760(b). In addition, joint petitions for discipline, which include suspensions, disbarments, and reprimands, must be filed in the Court of Appeals of Mary-

land. Md. Rule 16–772(b)(1). It is within that court's discretion to enter an order reprimanding the attorney and issuing conditions. Md. Rule 16–772(b)(3). *See e.g., Attorney Grievance Comm'n v. Kovacic*, 389 Md. 233, 884 A.2d 673, 675 n. 7 (2005) (rather than imposing the sanction from the parties Joint

pline matters to the Board of Bar Overseers and argues that the Board of Bar Overseers qualifies as a "disciplining court" as long as it imposes discipline pursuant to the body of regulations issued by a state court with the ultimate disciplining authority.[23] However, under the plain words or ordinary meaning of § 11(a), all disciplining bodies mentioned—federal courts, highest courts, and agencies and tribunals—either have or must themselves have the authority to disbar or suspend an attorney from the practice of law in the jurisdiction before reciprocal discipline can be imposed. Under the doctrines of *noscitur a sociis* and *ejusdem generis,* "the meaning of a word is or may be known from the accompanying words so that, under the rules, general and specific words, capable of analogous meaning, when associated together, take color from each other, so that general words are restricted to

a sense analogous to less general." *District of Columbia v. Estate of Parsons,* 590 A.2d 133, 137 n. 5 (D.C.1991) (citations and internal quotation marks omitted).[24] In Section 11(a), the words "highest court of any state" and "any other agency or tribunal with authority to disbar or suspend" take color from each other so that "highest court of any state" is understood to mean having the authority to disbar or suspend an attorney from the practice of law in the jurisdiction. Thus, the drafters' intent was to restrict reciprocal discipline to only these categories of courts or tribunals or agencies which share the ultimate power to suspend and disbar an attorney from the practice of law.

### The Drafting History of Rule XI, § 11(a)

▆▆▆▆ The Board argues that interpreting " 'disciplining court' to include dis-

---

Petition for Reprimand by Consent, the Court of Appeals set the matter for hearing); *Attorney Grievance Comm'n v. Page,* 389 Md. 122, 883 A.2d 912 (2005).

23. The Board contends that the Attorney Grievance Commission operates "like a prosecutor's office or grand jury rather than an intermediate appellate body under the direct supervision of the highest court." If the respondent and Bar Counsel agree, the Attorney Grievance Commission may issue a reprimand or direct Maryland Bar Counsel to issue a reprimand. If the respondent resists a reprimand, then either Bar Counsel or the Attorney Grievance Commission may pursue the matter only by petitioning the Court of Appeals for disciplinary or remedial action. The matter is "tried in the Circuit Courts before a state judge." The Board contends that at this step the Attorney Grievance Commission "ceases to operate like an adjudicator" because the Attorney Grievance Commission "stands as the petitioner in [the] case" becoming "an adversary of the respondent" while the Bar Counsel actually conducts the prosecution.

 "Proceedings before the [Attorney] Grievance Commission may be significantly more informal than those before the Board of Bar

Overseers. . . . [B]ecause the Grievance Commission may not issue disciplinary orders without the attorney's consent, the Commission does not appear to be obligated to observe the full constitutional requirements of procedural due process that must be observed by adjudicatory bodies such as this Board and the Massachusetts Board of Bar Overseers." The attorney's right to due process is only ensured "by his [or her right] to a full trial on the merits before a state judge not the Maryland courts." However, under our reciprocal discipline rules, this denial of an attorney's right to a full trial on the merits would be an exception to imposing reciprocal discipline. *See* § 11(c)(1).

24. "The principle of noscitur a sociis applies to sections and sentences in a manner similar to the application of the doctrine of pari materia statutes covering the same subject matter." 2A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 47:16 (6th ed. 2002). The doctrine of pari materia "is a canon of construction that statutes that are *in pari materia* may be construed together, so that inconsistencies in one statute may be resolved by looking at another statute on the same subject." BLACK'S LAW DICTIONARY 794 (7th ed. 1999).

cipline imposed by the lower-level disciplining arm of the highest state court, or a court with ultimate attorney discipline authority" is consistent with the drafting history of the provision. However, "[w]hen a legislature defines the language it uses, its definition is binding upon the court." 1A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 20:8 (6th ed. 2002); *see also District of Columbia v. Jerry M.*, 717 A.2d 866, 871 (D.C.1998). Here, this court, acting in a quasi-legislative capacity, defined the term "disciplining courts." As we have said, section 11, including section 11(a), is quite clear and unambiguous and, "the [more] plain the statutory [or regulatory] language is, the [less] likely the focus on legislative intent or statutory purpose will be determinative," *In re M.M.D., supra,* 662 A.2d at 855. Thus, we are not required to examine the legislative history. *See Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 754 (D.C.1983). Yet, "while '[the] plain meaning of the words is generally the most persuasive evidence of the intent of the legislature, ... the plain meaning rule has limitations.'" *Varela, supra,* 424 A.2d at 65 (D.C.1980) (first alteration added) (quoting *District of Columbia Nat'l Bank v. District of Columbia,* 121 U.S.App. D.C. 196, 198, 348 F.2d 808, 810 (1965) (citations omitted)). "[S]ince the judicial function is to ascertain the legislative intention[,] the Court may properly exercise that function with recourse to the legislative history, and may depart from the literal meaning of the words when at variance with the intention of the legislature as revealed by legislative history." *Id.; see also In re McBride,* 602 A.2d 626, 637 n. 20 (D.C.1992) ("Because the Board on Professional Responsibility and this court have broad supervisory powers over attorney discipline, our joint function is similar to that of an administrative agency construing its enabling statute.

Although this analogy is far from perfect, we believe we should be prepared in disciplinary cases, more readily than in other types of proceedings, to re-examine in light of our experience whether prior interpretations accord with legislative intent."). Thus, it is instructive to examine the drafting history of Rule XI, § 11(a).

On September 20, 1985, the draft version of the Rule XI of the Disciplinary Rules's Section 11.1, entitled "Notification," stated:

It shall be the duty of Bar Counsel to obtain copies of *all orders of discipline from other disciplining courts.* Upon learning that an attorney subject to the disciplinary jurisdiction of the disciplinary order, Bar Counsel shall obtain a certified copy of the disciplinary order and file it with the Board and with this Court. In addition, any attorney subject to disciplinary action by a court outside the District of Columbia or by another court in the District of Columbia shall promptly inform Bar Counsel of such action.

(Emphasis added.) This section was renumbered as 11(a) and this court published the proposed revision of the Board of Governors of the District of Columbia Bar in THE DAILY WASHINGTON LAW REPORTER, Vol. 116, No. 28 at 2703 (Dec. 27, 1988). The proposed revision did not define the term "disciplining courts." The Board of Governors's proposed revision to section 11(c) stated:

Upon receipt of a certified copy of *an order* demonstrating that an attorney subject to the disciplinary jurisdiction of this Court has been subjected to *professional disciplinary action outside the District of Columbia* or by another court in the District of Columbia, the Board shall promptly recommend to the Court whether reciprocal discipline should be imposed.

*Id.* at 2704 (emphasis added). This section does not use the term "disciplining court." On February 24, 1989, the Board on Professional Responsibility and the Board of Governors submitted Joint Comments. In the Joint Comments, both Boards addressed reciprocal discipline and asserted:

> Throughout this Section, there are references to discipline imposed by "other courts" as the basis for reciprocal discipline here. *In other jurisdictions, however (as in this one in the case of a public reprimand), a body other than a court may issue final discipline,* and we believe that such administrative orders of discipline in other jurisdictions should provide the same basis for reciprocal discipline here as a court order. . . .

> Accordingly, we recommend that the phrase "other disciplining authorities" be substituted for "other disciplining courts" in the first sentence of Section 11(a); that "another disciplining authority" be substituted for "another court" in the second sentence of Section 11(a); that "a final determination by a disciplining authority" be substituted for "final adjudication by a court" in the last sentence of Section (b); and that "disciplining authority" be substituted for "disciplining court" in the first sentence of Section 11(e).

After considering the petition and comments, this court amended the rules and added a "Definition" subsection (which became 11(a)) before the "Notification" subsection (which became 11(b)). The definition section read:

> (a) **Definition.** As used in this section, "disciplining court" shall include any court of the United States as defined in Title 28, Section 451 of the United States Code, the highest court of any state, territory, or possession of the United States, and any other agency or tribunal with authority to disbar or sus-

pend an attorney from the practice of law in any state, territory or possession of the United States.

THE DAILY WASHINGTON LAW REPORTER, Vol. 117, No. 145, 1569 at 1575 (July 31, 1989). The remaining subsections used the term "disciplining courts." This court addressed "bod[ies] other than courts that may issue final discipline" (such as disbarment and suspensions) by adding the third category and declined to adopt the Boards' joint recommendation to change "disciplining courts" to "disciplining authority" in order to encompass "bod[ies] other than the courts that may issue ['a public reprimand']." *Id.*

The maxim of statutory construction, expressio unius est exclusio alterius, which means "the express inclusion of one (or more) thing(s) implies the exclusion of other things from similar treatment," *Castellon v. United States,* 864 A.2d 141, 149 (D.C.2004) (emphasis in original) (citation and internal quotation marks omitted), further supports the conclusion that "lower-level disciplining arm[s] of the highest state court" were excluded from the definition of "disciplining courts."

> [This court] appl[ies] the maxim with a considerable measure of caution, since legislative omission does not always reflect intentional preclusion. The maxim is only an aid to statutory construction, and therefore is subordinate to clear and contrary evidence of [legislative] intent. *The maxim's force turns on whether, considering the statutory structure and legislative history, we can be confident that the draftsman, in expressing one thing, would have likely considered alternatives.*

*Id.* (emphasis added) (citations and internal quotation marks omitted). The structure of section 11 changed to address the term "disciplining court" and its definition became the first subpart of the section.

The drafting history of the section shows that the court clearly considered the Joint Comments recommending that the term "disciplining courts" be changed to "disciplining authority" to encompass "bod[ies] other than courts that may issue ['a public reprimand']." This court, however, retained the concept of "disciplining courts," and further in following subsections of section 11, intentionally used the phrases "by a disciplining court outside the District of Columbia, or by another court in the District of Columbia." Therefore, we disagree with the Board majority's contention that its interpretation of § 11(a) is consistent with the legislative history of that subsection.

 Indeed, "[a] review of the [drafting] history ... reveal[s] [no] ambiguities" in the regulatory language. *Peoples Drug Stores, Inc., supra,* 470 A.2d at 754. Unlike a situation "[w]here the literal reading of a [regulatory] term would compel an odd result [requiring this court to] search for other evidence of [the drafters'] intent to lend the term its proper scope," *Jerry M., supra,* 717 A.2d at 875, here, the literal reading of the term "disciplining court" with the definition given clearly establishes that the drafters intended for us to reciprocate discipline from courts and agencies with the authority to suspend and disbar an attorney. "The definition of a term in the definitional section of a statute controls the construction of that term wherever it appears throughout the statute. A court must follow a [regulatory] definition unless the necessity for a different one shall 'clearly appear.'" Sutherland Statutes and Statutory Construction, supra, at § 20:8 (quoting *Southbridge Finishing Co. v. Golding,* 2 A.D.2d 430, 156 N.Y.S.2d 542, 545 (1956)). Here, the drafting history of the term "disciplining courts" reveals that the drafters of § 11(a) rejected the interpretation that the Board seeks now to give to that term. There-

fore, we hold that neither the Massachusetts Board of Bar Overseers nor the Attorney Grievance Committee of Maryland is a "disciplining court" under D.C. Bar Rule XI, § 11(a); and that before reciprocal discipline may be imposed by this court for professional misconduct in another jurisdiction, an attorney admitted to practice in this jurisdiction must have been disciplined by a disciplining court outside the District.

### Conclusion

Although we readily appreciate Bar Counsel and the Board's concern regarding the disciplinary case load, and the "burden" that Bar Counsel must bear in pursuing *de novo* discipline, rather than reciprocal discipline, we are constrained by the clear and unambiguous words of Rule 11(a), its drafting history, and our prior case law to conclude that in the consolidated cases before us, reciprocal discipline is inappropriate for the reasons already stated. While a change in Rule XI, § 11 may be desirable, it must be accomplished by rule, rather than case law which skews the clear and unambiguous meaning of the current rule. Accordingly, we dismiss the reciprocal disciplinary proceeding against Mr. Greenspan. In Ms. Silverman's case, in conformity with the Board's recommendation, we dismiss the reciprocal proceeding against her; however, we adopt the Board's recommendation that, in the original discipline case, Ms. Silverman be publicly censured.

It is therefore

ORDERED that the reciprocal discipline proceeding in Mr. Greenspan's case, No. 02–BG–1350 be dismissed; and it is further

ORDERED that in case No. 04–BG–73, Leslie D. Silverman, Esq., be publicly censured in the original discipline proceeding,

and that the reciprocal disciplinary proceeding be dismissed.

*So ordered.*

RUIZ, Associate Judge, dissenting:

These cases come to us in an odd posture and are being decided by the majority through the application of principles of statutory interpretation that are primarily designed to defer to another branch of government, with little regard to purpose or overall context, notwithstanding that what is presented for interpretation is a rule fashioned by this court in the highly interrelated context of reciprocal discipline. In my opinion, the reflexive application of "plain meaning" interpretation to our rule unnecessarily yields a result at odds with the system of reciprocal discipline.

At the outset I would note that the posture of the cases is that neither of the sanctioned attorneys takes exception to the imposition of reciprocal discipline based on the proceedings in the original disciplining jurisdictions, Massachusetts and Maryland. Indeed, Mr. Greenspan stipulated that he violated the Massachusetts Rules on Professional Conduct, waived his right to a hearing, and agreed to a public reprimand. Before us, he has in no way challenged the Massachusetts sanction nor argued against the imposition of reciprocal discipline here—indeed he has not filed an exception to the recommendation of the Board on Professional Responsibility for a more severe non-identical reciprocal sanction of a 30–day suspension. The case is similar with respect to Ms. Silverman, who agreed with Maryland Bar Counsel that her conduct violated the Maryland Rules of Professional Conduct, and jointly filed a petition for public reprimand with the Maryland Attorney Grievance Commission. Before us, she also does not challenge the Maryland procedure nor does she argue against the imposition of the corresponding sanction here. In other words, this is an intramural dispute between Bar Counsel and the Board on Professional Responsibility, albeit only a partial dispute, as they agree that the Massachusetts Board of Bar Overseers should be deemed a "disciplining court;" their disagreement is only over whether the Maryland Attorney Grievance Commission should be deemed so as well. The majority disagrees with both the Board on Professional Responsibility and Bar Counsel in the Massachusetts case and sides with the Board in the Maryland case. For the reasons that follow, I agree with the test in the Greenspan case that the Board and Bar Counsel recommend, and would decide, applying that test, that both the Massachusetts Board of Bar Overseers and the Maryland Attorney Grievance Commission come within the definition of "disciplining court" for the purpose of triggering reciprocal discipline.

The dispute between the Board and Bar Counsel over whether we should defer to the uncontested determinations made and sanctions imposed by the proper disciplinary bodies in Maryland and Massachusetts turns on an interpretation of a rule of this court which defines "disciplining court" as:

[A]ny court of the United States as defined in Tile 28, Section 451 of the United States Code, *the highest court of any state, territory, or possession of the United States,* or any other agency or tribunal with authority to disbar or suspend an attorney from the practice of law in any state, territory, or possession of the United States.

D.C. Bar R. XI, § 11(a) (emphasis added). Specifically, the issue is whether the Attorney Grievance Commission in Maryland and the Board of Bar Overseers in Massachusetts are encompassed by the second prong of the definition of the term "disci-

plining court," which includes "the highest court of any state, territory or possession of the United States." D.C. Bar R. Rule XI, § 11(a). Obviously neither the Massachusetts Board of Bar Overseers nor the Maryland Attorney Grievance Commission is literally the "highest court" of its state, but each acts as its highest court's *alter ego* in issuing reprimands, as the former has been expressly designated by the Massachusetts Supreme Judicial Court and the latter by the Maryland Court of Appeals—the highest courts in their respective jurisdictions—to act precisely as they have done in these cases. No one disputes the authority of those judicial bodies to delegate this responsibility and there is no challenge that the delegated responsibility has been exceeded or irresponsibly exercised.[25]

So what is the source of the resistance? As the majority reasons, it is that neither of these *alter egos* of the highest courts is the highest court *itself*, and thus, cannot be considered under our rule to be a "disciplining court." I disagree with this rigid interpretation of our rule and with the majority's reasoning to achieve it. Any interpretation of the language of a rule must be contextual, taking into account related provisions and the purpose of the rule. We have more leave than usual to do so in this case because the rule being interpreted is one we have issued under our "broad supervisory power over attorney discipline" and "we should be prepared in disciplinary cases, more readily than in other types of proceedings" to interpret our rule in light of its purpose. *In re McBride*, 602 A.2d 626, 637 n. 20 (D.C.1992) (en banc). For this reason, the usual canons of statutory and regulatory interpretation relied upon by the majority that restrict courts to "plain meaning" application of statutory language do not apply with equal force because we are not here concerned with separation of powers issues that arise when the judicial branch of government is tasked with implementing enactments of the legislative or executive branches. *See Fogleman v. Mercy Hosp.*, 283 F.3d 561, 569 (3d Cir.2002) ("The preference for plain meaning is based on the constitutional separation of powers. . . .").

Nor do context and drafting history support the majority's restricted reading; to the contrary, they require a more expansive interpretation. The majority's indication that the term "disciplining court" is used in a number of other provisions, see *ante* at 331, does not, without more, elucidate its meaning in a contextual setting, but simply begs the question before us: what is a "disciplining court" for the purposes of reciprocal discipline? What the repeated use of the term "disciplining

---

**25.** In this court, no one argues that the first or third prongs of the definition of "disciplining court" is applicable here to the Maryland Attorney Grievance Commission or the Massachusetts Board of Bar Overseers. Some Board members dissenting in the Greenspan case have argued that if alter egos such as the ones before us (with limited power of sanction) are considered to be equivalent to the "highest court" under the second prong, a similar body in another state could also come under the third prong of the definition if, in addition, it had greater "authority to disbar or suspend an attorney from the practice of law in any state, territory or possession of the United States." D.C. Bar R. XI, § 11(a). I submit the argument does not hold water. The possibility that a particular body *might* be covered under two prongs of the definition does not necessarily make either one superfluous as evidenced by this case where neither the Massachusetts Board of Bar Overseers nor the Maryland Grievance Commission has authority to "disbar or suspend" (as required by the third prong of the definition), but both exercise the authority to issue reprimands directly under the aegis of the highest court. Further, the third prong refers to *"any other* agency or tribunal" suggesting an intent to be inclusive rather than restrictive.

court" in other sections of the rule should alert us to is that there are consequences elsewhere in our rules to a too-limited interpretation. One of them is the loss of prompt disciplinary information to Bar Counsel and the public. In addition to streamlining and harmonizing the process of imposing discipline across jurisdictions, the reciprocal discipline system is an effective way of informing consumers of legal services in this jurisdiction of lapses by attorneys that have occurred and been sanctioned elsewhere. As Bar Counsel points out, however, the restrictive reading of "disciplining court" that the majority adopts will have the unwanted consequence of narrowing the obligation we impose on attorneys admitted to our Bar "to promptly inform Bar Counsel" of "professional disciplinary action by a disciplining court outside the District of Columbia ...." D.C. Bar R. XI, § 11(b). Under the majority's interpretation, neither Mr. Greenberg nor Ms. Silverman would have an obligation to inform D.C. Bar Counsel of their public reprimands-yet the majority, perhaps unaware of this casualty, impliedly takes Ms. Silverman to task for not reporting her Maryland sanction to D.C. Bar Counsel. See *ante* at 330.[26]

I also disagree with the majority's conclusion that "under the plain words or ordinary meaning of § 11(a), all disciplining bodies mentioned-federal courts, highest courts, and agencies and tribunals— either have or must themselves have the authority to disbar or suspend an attorney from the practice of law in the jurisdiction before reciprocal discipline can be imposed." See *ante* at 340. It argues that under the doctrines of *noscitur a sociis* and *ejusdem generis,* the term "disciplining court" includes "only th[o]se categories

of courts, tribunals or agencies" that have the "ultimate" power "to suspend and disbar an attorney from the practice of law." See *ante* at 340. The majority's analysis under those principles is incomplete, however, in at least two respects. First, it fails to explain why in a definition composed of three parallel subparts, the first prong of the definition should not similarly "take color" from the third prong's requirement; and, second, it does not take cognizance that what the third prong requires is the authority to "disbar or suspend an attorney from the practice of law *in any state, territory, or possession of the United States.*" D.C. Bar R. XI, § 11(a) (emphasis added). Thus, the "ultimate" power the majority would require of all "disciplining courts" would disqualify the "courts of the United States as defined in Title 28, section 451 of the United States Code"—which are "disciplining courts" under the first prong of the definition—yet do not have the power "to disbar or suspend attorneys from the practice of law in any state, territory, or possession of the United States," a power that in virtually all states is possessed only by the highest state court. See, e.g., *In re Robertson,* 608 A.2d 756, 757 (D.C.1992).

Similarly, the majority's exposition of the drafting history of the rule is unpersuasive. That the term "disciplining court" was adopted rather than "disciplining authority" is beside the point as the term is defined in the rule and it is that definition that concerns us. Under the rule, a "disciplining court" need not be a court at all as it is clear beyond peradventure that under the third prong of the definition "an agency or other tribunal" is deemed a "disciplining court" for purposes of reciprocal discipline if it has the requi-

**26.** According to Bar Counsel, Mr. Greenspan also failed to report his Massachusetts repri- mand.

site authority to disbar or suspend from the practice of law. D.C. Bar R. XI, § 11(a). What is important about the drafting history is that the proposed rule was amended, and a definition added, for the express purpose of expanding it to include non-judicial bodies as "disciplining courts" in order to take account of the different disciplinary structures in other jurisdictions. *See* Joint Comments of the Board on Professional Responsibility and the D.C. Bar Board of Governors, *ante* at 342.

Instead, what should concern us is whether application of reciprocal discipline to include the sanctions imposed in these cases would unfairly catch lawyers who would have relied on our rule to believe they could stipulate to misconduct and consent to public reprimands in Maryland and Massachusetts without any reciprocal discipline in the District of Columbia. The majority does not proffer that as a problem, and I see no reason to believe that an attorney would think that she or he would be immune from the usual reciprocal consequences of attorney discipline depending on details of the adjudicatory structure in the original disciplining jurisdiction that do not implicate fairness concerns. There is one procedural issue that I believe could give this court pause before giving a non-literal interpretation to the term "highest court" in the definition of "disciplining court," and that is whether there might be arguments against recognizing foreign discipline imposed by bodies like the Maryland Attorney Grievance Commission and

the Massachusetts Board of Bar Overseers that could be received from other interested persons through the process of a proposed rule change after notice and a period for comment—an opportunity for broader input that is absent from case adjudication. This is an important consideration, and one that would be dispositive for me, were it not for the fact that we have zealous and opposing advocacy by highly competent parties. The Board, which objects to recognizing the Maryland Grievance Commission's reprimand as reciprocal discipline under the rule as presently drafted, presents no unanswerable objection to a change to the text of the definition, were we to make it expressly via an amendment to the rule, that would encompass the Maryland reprimand as properly falling within the system of reciprocal discipline.[27] Indeed we would be hard pressed as a court to fault the approach taken by Massachusetts and Maryland as we ourselves have seen fit in this jurisdiction to delegate the imposition of reprimands to the Board on Professional Responsibility, *see* D.C. Bar R. XI, § 3(a)(4), and the issuance of informal admonitions to Bar Counsel. *See id.* at § 3(a)(5).

What makes sense, consistent with our cases giving effect to a nationwide system of reciprocal discipline, is to recognize and give deference when discipline has been imposed pursuant to another jurisdiction's lawful authority as mandated by the highest court of that jurisdiction. Effective

---

**27.** The Board raises the problem that, in cases where the attorney does not agree to a reprimand, the Maryland Attorney Grievance Commission acts first as an adjudicator and then also as prosecutor before the Maryland Court of Appeals because it oversees the activities of Maryland Bar Counsel. Rather than assume in the abstract that the Maryland Court of Appeals has designed a procedurally-flawed discipline system, however, if the At-

torney Grievance Commission's dual role were in fact to implicate fairness concerns in a particular case, we can address them under our rules if the resulting proceeding is "so lacking notice or an opportunity to be heard as to constitute a deprivation of due process" or if imposition of reciprocal discipline would constitute "a grave injustice." D.C. Bar R. XI, § 1(c)(1), (3).

reciprocal discipline is an essential tool in the increasingly multi-jurisdictional and national practice of law, and our rules reflect "a conscious effort by the drafters to presume similar reciprocal discipline should be imposed unless the circumstances warrant a different result." *In re Drury,* 638 A.2d 60, 63 (D.C.1994). Such recognition is consistent with our often-expressed view that the system of reciprocal discipline "accord[s] deference, for its own sake to the actions of another jurisdiction with respect to the attorneys over whom we share supervisory authority." *In re Zdravkovich,* 831 A.2d 964, 969 (D.C. 2003). Moreover, should there be concern that the system adopted in a sister jurisdiction or a particular proceeding does not meet standards of fairness we deem fundamental, our rules already provide an escape valve by permitting attorneys to show by clear and convincing evidence that the procedure in another jurisdiction was "so lacking in notice or opportunity to be heard as to constitute a deprivation of due process," there was an "infirmity of proof," "imposition of the same discipline by the court would result in grave injustice," or "misconduct elsewhere does not constitute misconduct in the District of Columbia." D.C. Bar R. XI, § 11(c)(1), (2), (3). Similarly, in cases of reciprocal discipline the Board is permitted to argue, after notice to the attorney and an opportunity to be heard, for a greater or lesser sanction as an exception to identical discipline. *See* D.C.Bar. R. XI, § 11(e), (f); *In re Drury,* 638 A.2d at 62 (permitting imposition of greater discipline in a reciprocal discipline case subject to notice and opportunity to be heard in this jurisdiction). Our reciprocal discipline rules are framed, in other words, to permit exceptions for substantive reasons but only in special circumstances, not to have us engage in second-guessing the considered decisions made by our judicial colleagues in the highest courts of other jurisdictions in fashioning the precise contours of their bar disciplinary structures.

As an example, the Board in this case has recommended reciprocal but not identical sanction—a 30–day suspension—for Mr. Greenspan's neglect of client matters and failure to cooperate with Massachusetts disciplinary authorities on the ground that the misconduct warrants a greater sanction here. The majority does not reach the merits of this recommendation, but dismisses the reciprocal action against him, with the understanding that Bar Counsel may institute an original proceeding based on the same misconduct to which Mr. Greenspan has stipulated and for which he has already been sanctioned in Massachusetts—and which is likely to result in the same 30–day suspension recommendation that the Board recommends in the reciprocal case. In addition to highlighting the obvious (and in my mind unnecessary) expenditure of resources of requiring an original discipline proceeding to accomplish a conclusion more readily-accomplished in the reciprocal discipline proceeding, the Board's recommendation of non-identical reciprocal discipline illustrates that deference to the *fact* of imposition of sanction in another jurisdiction under a system of reciprocal discipline does not leave us without authority to depart from the identical sanction in an appropriate situation. The cases before us raise only the preliminary question of whether the reciprocal disciplinary system is to be invoked at all, with its concomitant shift in burden to those who would depart from the imposition of identical reciprocal discipline.

I dissent because I believe that under the majority's reasoning, important benefits of reciprocal discipline as well as common sense and efficient use of already stretched bar discipline resources (includ-

ing this court's) are needlessly being sacrificed on the altar of "plain meaning." Because it would further the purpose of reciprocal discipline and for reasons of practicality and comity, I would recognize, as this court is authorized to do, that the public reprimands that were lawfully issued and consented to in Maryland and Massachusetts trigger application of the reciprocal discipline system in the District of Columbia.